NELLIE M. MAHANEY, as Executrix, etc., of JOHN WHALEN, Deceased, Plaintiff, *v.* 580 MADISON AVE., INC., Defendant.

Supreme Court, New York County, January 2, 1930.

*Edmund L. Mooney* [*Thomas F. Morris* with him on brief], for the plaintiff.

*Pfeiffer & Crames* [*Alexander Pfeiffer* of counsel], for the defendant.

LEVY, J. These actions are unquestionably both at law. They were tried on the law side of the court under a stipulation that the court might direct a verdict with the same force and effect as if it were rendered by a jury. What is more, counsel for the vendor on a number of occasions during the trial emphasized the fact that the actions were at law and, therefore, not to be determined upon grounds cognizable only in a court of equity. His contention that " We cannot import into this case any of those considerations which pertain in a court of equity " is well founded, being a necessary corollary of the election of both parties to seek redress in a court of law and to stand on their strictly legal rights. The rights of the parties are to be measured solely and exclusively by the conditions existing on the day fixed for closing, the so-called law day, and at law, time is of the essence. (*Schmidt* v. *Reed*, 132 N. Y. 108, 113; *Zorn* v. *McParland*, 11 Misc. 555; affd., 155 N. Y. 684; *Friedman* v. *Fishbein*, 215 App. Div. 174, 176.)

It is undisputed that at the time fixed for the closing of title the property contracted to be sold was subject to the lien of a mortgage held by the Union Dime Savings Bank upon which the sum of $100,000 and interest was due and unpaid. Under the terms of the contract of sale, however, the property was to be conveyed free of all mortgages. The vendee tendered the full purchase price and demanded a proper deed conveying the title free from incumbrances other than those specifically provided for in the contract. The existence of the aforesaid mortgage (originally in the sum of $250,000, but subsequently reduced) was among the objections to the title which the vendee expressly pointed out to the vendor. Although the contract contained a provision to the effect that " If, for any reason, the Seller shall be unable to convey a marketable title on the date herein set for the closing of title, she shall be entitled to a reasonable adjournment or adjournments  *  *  *  to permit the Seller to dispose of objections to marketability," the vendor made no attempt to take advantage of this clause. Instead, counsel for the vendor took the position that the title was marketable and proper

and proceeded to tender a deed and various other documents for the purpose of placing the vendee in default. He stated that " The executrix takes the position that as to each and all of the details given in Exhibit A [the list of objections] the tender of the papers here is sufficient to convey good title, waiting only for the appearance of the representative of the holder of the mortgage, who we have been notified is on his way here from the bank to deliver his satisfaction piece." After the vendee had waited in vain for a considerable length of t me for the appearance of the mortgagee's representative, in reliance on the statement that he was on his way, it was agreed that " the Purchaser will assume that the representative of the Union Dime Savings Bank was present and that he had in his hand the bond and mortgage held by the Union Dime Savings Bank and a duly executed and acknowledged satisfaction of mortgage." It is to be noted, however, that the vendee did not agree to assume that the satisfaction piece and the bond and mortgage were tendered to it either by the vendor or by the mortgagee's representative. This is especially significant in view of the fact that the vendor did not have the funds with which to pay to the mortgagee's representative the principal and interest due on the mortgage and thus obtain from him the satisfaction piece, bond and mortgage, for delivery to the vendee. In fact, the vendor expressly stated that " It is the intention of the executrix, if the transaction had gone through, that the amount should be paid out of the moneys tendered by the Purchaser."

The question is, therefore, presented whether the vendor could place the vendee in default by tendering a title subject to an unsatisfied mortgage of $100,000 and interest, merely because the mortgagee was assumed to be present at the closing with the satisfaction piece, ready to turn it over upon payment of the amount due on the mortgage.

It is well settled that the existence of unsatisfied liens constitutes a valid ground for the rejection of title where the contract calls for a conveyance free from liens, even though the vendor offers to allow the vendee the amounts necessary to satisfy such liens. The courts of this State have repeatedly declared that the vendor cannot impose upon the vendee the burden of seeking out the lienors and procuring the satisfaction of their liens. (*Webster* v. *Kings County Trust Co.*, 145 N. Y. 275; *Zorn* v. *McParland, supra; Berger* v. *Crist*, 121 App. Div. 483.)

It may well be that a different rule is applicable where documents satisfying the liens are tendered to the vendee at the closing of title. In such a case there would seem to be no justification for a rejection of title based upon the existence of such liens. It does not follow,

however, that the mere presence, at the closing, of representatives of the lienors with duly executed satisfactions in their possession, is sufficient, *in itself*, to place the vendee in default. The latter cannot properly be expected to pay the entire purchase price in return for a conveyance of property incumbered by unsatisfied liens and trust to the vendor's using the purchase money to obtain the satisfactions from the lienors and to the vendor's thereafter turning the same over to him. As the Court of Appeals well said in *Morange* v. *Morris* (3 Keyes, 48, at p. 51): " In the present case the vendor was unable to perform his agreement, for the reason that the premises were incumbered with the liens for taxes and assessments admitted in the answer. * * * The plaintiff was under no obligation to pay his money to the vendor, and trust to a remedy by action for damages in case the vendor failed to remove the incumbrances. It was the duty of the defendant to have caused them to be discharged before the time arrived at which he had stipulated to convey." This language was quoted with approval in *Zorn* v. *McParland (supra)*. In *Pfister* v. *Heins* (136 App. Div. 457) LAUGHLIN, J., writing for the court, declared (at p. 464) that the offer of a bill of sale while an outstanding mortgage was unsatisfied did not constitute a good tender in the absence of an agreement on the part of the vendee to advance the amount due on the mortgage.

The parties having chosen to stand upon their strictly legal rights, measured by the condition of the title on the day fixed for closing, it was incumbent upon the vendor, in order to place the vendee in default, to tender a title free from incumbrances except as otherwise stipulated in the contract. This the vendor failed to do. No tender of a satisfaction of the $100,000 mortgage was made or assumed to be made to the vendee and the latter was consequently not obliged to pay over the purchase money and run the risk that the vendor might not use it to procure the satisfaction piece, or that the mortgagee might refuse to surrender the satisfaction piece to the vendor, or that for some other reason the vendor might fail to deliver the satisfaction piece to the vendee.

The situation here presented would seem to furnish greater justification for a rejection of title by the vendee than that which obtained in cases such as *Webster* v. *Kings County Trust Co. (supra)*, where the courts refused to impose upon the vendee the burden of procuring the satisfactions of outstanding liens, *even though the amount thereof was allowed by the vendor*. Surely it would be a greater hardship upon the vendee to require him to intrust funds sufficient to satisfy the outstanding liens to the vendor for the purpose of enabling the latter to obtain the satisfactions. The

presence of representatives of the lienors at the closing may tend to minimize the risk taken by the vendee should the latter pay the price before getting the satisfactions, but it certainly does not entirely eliminate that risk.

It might be well, in this connection, to note that the only request for an adjournment of the closing made by the vendor was specifically stated to be for the purpose of computing the interest on unpaid water rates so that a " meticulous tender may be made with respect thereto." The vendee, however, at once waived " any question of interest," and that was the end of all requests for an adjournment, although counsel for the vendee clearly pointed out that the " contract requires that we get title free of this mortgage; that is free of the lien of this mortgage."

It is pertinent also to direct attention to the fact that this case involves more than a mere inadvertent failure on the part of the vendor actually to tender the satisfaction of mortgage. The vendor concededly intended to use the purchase money payable by the vendee to obtain the satisfaction from the mortgagee's representative. It is quite improbable that the latter would have surrendered the satisfaction before the amount unpaid on the mortgage was tendered to him, had the vendor made a request to that effect. In short, the vendor was unable to make the required tender, and would have been unable to make it, as far as the record shows, even if she had obtained an adjournment. This difficulty could have been avoided had a provision been inserted in the contract that the vendee was to advance the amount of the mortgage to enable the vendor to satisfy the same at the closing.

In the light of the foregoing, it is my opinion that the vendee by tendering the full purchase price on the law day, placed the vendor in default and that it is, therefore, entitled to recover its deposit and the reasonable expenses of examining the title. It also follows that the vendor's complaint in her action for damages must be dismissed. It is, accordingly, unnecessary to consider the various other objections to the title urged by the vendee. Suffice it to state that it is my view that there were encroachments which rendered the title unmarketable and thus furnished additional justification for the rejection of title. (*Acme Realty Co.* v. *Schinasi*, 215 N. Y. 495; *Perlman* v. *Stellwagen*, 115 Misc. 6.)

In accordance with the stipulation entered into at the outset of the trial a verdict is directed in favor of 580 Madison Avenue, Inc., for $45,000, with interest from March 26, 1929, plus $884.50, with interest from May 15, 1929, with appropriate exception to Nellie M. Mahaney. Ten days' stay. Sixty days to make a case.