# Roby et al. v. Arterburn et al.
## Stevens v. Same.

(Decided June 4, 1937.)

(As Modified on Rehearing Oct. 15, 1937.)

WILBUR FIELDS and WOODWARD, DAWSON & HOBSON for appellant Roby.

NELSON HELM and TRABUE, DOOLAN, HELM & HELM for appellant Stevens.

Samuel B. KIRBY, Jr., GRADY CARY and CLEM W. HUGGINS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

We have here two appeals from the same judgment, and we shall endeavor to dispose of both of them in one opinion. J. M. Roby, A. J. Eline, A. J. Wieber, E. W. Davis, and William Haunszy are members of a committee engaged in the reorganization of the Farmers Bank & Trust Company of St. Matthews, Ky., and for convenience we shall hereinafter refer to them simply as "Roby et al. Comm." They have appealed from a judgment holding that they had no lien on a certain tract of land, meticulously described in the pleading, etc., but which we shall hereinafter refer to as "the 123 acres." We shall have occasion to refer to certain records, all of which are in the office of the clerk of the Jefferson county court, but for convenience we shall simply refer to the books and pages without anything else.

By this same judgment B. W. Stevens was required to accept a deed tendered him for one acre of this land and to pay in cash and by notes, $500 therefor, and hence he appeals. Stevens' appeal is a quia timet appeal. He is perfectly satisfied with the judgment as it is, but will be very much dissatisfied if it is held that "Roby et al. Comm." have a lien on "the 123 acres," as such holding would seriously affect his rights.

We will have to refer in the course of this opinion to numerous dates and occurrences, so for convenience we shall give here a list of such dates and occurrences in chronological order.

(a) January 21, 1901, will of Wm. C. Arterburn recorded, Will Book 23, p. 426.

(b) October 28, 1927, deed Norbourn Arterburn and wife to Crawford Arterburn, Deed Book 1304, p. 555.

(c) May 2, 1928, deed Esther H. Arterburn and husband to Andrew M. Sea, Deed Book 1325, p. 578.

(d) May 2, 1928, deed Andrew M. Sea to Crawford Arterburn, Deed Book 1329, p. 411.

(e) October 29, 1932, Allen Hieatt, receiver of Farmers Bank & Trust Company in the Jefferson circuit

court action 217-724, recovered a judgment against Crawford Arterburn for $1,762.64 with interest from September 2, 1931, and $614.04 with interest from October 4, 1931, and his costs.

(f) December 22, 1932, Allen Hieatt, receiver, assigned this judgment (e), supra, to "Roby et al. Comm."

(g) February 17, 1934, "Roby et al. Comm." in the Jefferson circuit court recovered a judgment against W. N. Arterburn and Crawford Arterburn for $275 with interest from September 21, 1931, and costs, $17.55.

(h) February 15, 1935, fi. fa. No. 32808 was issued upon judgment (e) and was placed in the hands of the sheriff of Jefferson county.

(i) February 23, 1935, the sheriff executed fi. fa. No. 32808 by levying it upon the right, title, and interest of Crawford Arterburn in "the 123 acres," and he returned this execution with his levy indorsed thereon.

(j) On May 17, 1935, venditioni exponas No. 33069 issued on fi. fa. No. 32808, but was returned with this indorsement thereon:

"Came to hand May 17, 1935, at 2:57 P. M. 6/18/35 Returned without action by order Plaintiff atty. H. Watson Lindsey, S. J. C. By J. M. Eskridge, D. S."

(k) June 19, 1935, venditioni exponas No. 33169 was issued directing the sheriff to sell the land on which he had levied fi. fa. No. 32808 [see (i), supra].

(l) On June 26, 1935, "Roby et al. Comm." recovered a judgment against Crawford Arterburn, W. N. Arterburn, and J. F. Reichspfarr for $150 with interest from March 31, 1935, and costs, of $21.90.

(m) July 18, 1935, the sheriff advertised "the 123 acres" for sale by hand bills.

(n) July 20, 1935, this property was appraised at $25,000.

(o) August 1, 2, and 3, 1935, this sale was advertised in the Herald-Post.

(p) August 5, 1935, sale was made, and "Roby et al. Comm." became purchasers of the entire "123 acres" for $2,650, and that although Crawford Arterburn was then living thereon no homestead was allotted him before that sale was made.

(q) August 5, 1935, of the $2,650 produced at the sale on this date [see (p), supra], $152.92 was used to pay costs, and the balance, $2,497.08, was applied as a credit upon judgment (e) upon which fi. fa. No. 32808 had issued.

(r) August 30, 1935, "the 123 acres" having brought less than two-thirds of its appraised value, the execution defendant Crawford Arterburn was entitled to and did remain in possession of "the 123 acres," and had the right to such possession and to redeem this "123 acres" for twelve months. See section 1684, Ky. Stats. This right of redemption is itself subject to sale under execution, and on August 30, 1935, "Roby et al. Comm." procured the issual of fi. fa. No. 33360 upon their judgment (e) with credit thereon of $2,497.08 produced by the sale (p), after paying costs [see (q), supra].

(s) September 5, 1935, the sheriff levied fi. fa. No. 33360 upon all the right, title, and interest of Crawford Arterburn in "the 123 acres" and returned this fi. fa. with that levy indorsed thereon.

(t) On April 17, 1936, Crawford Arterburn and Esther Arterburn, his wife, and B. W. Stevens signed a contract, now of record in Deed Book 1599, p. 572, by which for the consideration of $100 then paid them by Stevens, Crawford Arterburn and wife agreed to convey to B. W. Stevens one square acre to be carved out of this "123 acres" at the intersection of Hubbard lane and Rudy lane, $150 more to be payable upon delivery of deed, and a balance of $250 to be evidenced by a note to Crawford Arterburn bearing interest, secured by a lien on the land and due in six months.

By this contract Arterburn and wife gave to Stevens an option to purchase an additional three acres particularly described and surrounding the one acre and including it to make four acres all told, the contract providing:

> "This foregoing option shall remain in force for a period of one year after delivery of a deed to the tract first hereinabove described and the purchase price of said three acres shall be the sum of $1500 payable in three equal installments in six, twelve, and eighteen months from the date of exercise of the option by second party."

This contract further provided: That Stevens was to have an option to purchase the entire "123 acres"

upon the following terms, within the following time, and that all these purchases were to be upon the following conditions:

"The consideration to be paid for said entire farm shall be the sum of $75,000, payable in cash within one year from the date of the exercise of this option and this option shall begin and remain effective for the same period as the option last hereinabove granted on the three acres. It is agreed by all the parties hereto that the sale of the tract first hereinabove described and the granting of the option upon the tracts second and third hereinabove mentioned are intended to be and shall be considered one inseparable contract, and that the failure of first parties to make satisfactory title to any of said tracts shall void all obligations of all parties hereunder and shall entitle second party to a refund of all sums paid hereunder with legal interest thereon. The term 'satisfactory title' as just used shall mean a good fee simple title with covenant of general warranty, excepting, however, easements heretofore granted for telephone power lines, water pipes or roads."

(u) On April 21, 1936, having had a deed to Stevens for the one acre prepared, Crawford Arterburn and his wife signed and acknowledged it and tendered it to Stevens and he declined to accept it. Stevens had not been told of the condition of this title or of these executions or sales at the time he signed the contract (t), but after he signed it he took it to his counsel, Mr. Nelson Helm, upon whose advice it was probably rejected, but there is neither pleading nor proof to that effect. It was shown by the deposition of Mr. Henry A. Holzheimer, a real estate broker of ten years' experience living in St. Matthews and acquainted with the prevailing prices and the land set out in this contract (t), that the sums set out therein would be good prices for this property.

(v) On June 18, 1936, fi. fa. No. 34187 was issued on judgment (1) and placed in the hands of the sheriff, and he levied it upon the right, title, and interest of Crawford Arterburn in "the 123 acres."

(w) On June 18, 1936, fi. fa. No. 34188 was issued on judgment (g), it was placed in the hands of the sheriff who levied same on the right, title, and interest of Crawford Arterburn in "the 123 acres."

(x) On June 20, 1936, Crawford Arterburn moved

the court in action 217724, wherein judgment (e) had been obtained whereon fi. fa. No. 32808 (i) and venditioni exponas No. 33169 had issued, to set aside that sale as void because at the time of the attempted sale (p) he was living upon this "123 acres," entitled to a homestead therein, and this sale was made without such allotment having been made.

(y) Between July 2, and July 9, 1936, so it is charged and nowhere denied, "the sheriff undertook in said action No. 217724, to allot plaintiff a homestead in said lands without application therefor by this plaintiff and without notice to him, by choosing two persons to select a homestead and survey a boundary and report their action. Plaintiff says that the sheriff had at that time no execution or other writ or process in his hands issued in that action and had long since returned Execution No. 32808 and the venditioni exponas No. 33169 under which he held the sale, and was without any authority to appoint appraisers or to allot a homestead to plaintiff or to cause a homestead to be allottted to plaintiff, and that no statute or other law of Kentucky authorizes such conduct by a sheriff."

(z) On January 9, 1937, "Roby et al. Comm." tendered an amended answer and cross-petition wherein they pleaded that sale (p) was on November 9, 1936, set aside and held for naught.

(aa) On November 21, 1936, after entry of motion (x), supra, "Roby et al. Comm." procured the issual of venditioni exponas No. 34536 upon their judgment (e) and their fi. fa. No. 32808 [see (i), supra].

(bb) On November 27, 1936, at direction of "Roby et al. Comm." this venditioni exponas No. 34536 was returned without action.

(cc) December 10, 1936, "Roby et al. Comm." procured the issual of venditioni exponas No. 34599 on judgment (e).

(dd) On January 4, 1937, sale was had under this venditioni exponas No. 34599 (cc) and the right, title, and interest of Crawford Arterburn in this "123 acres" appraised at $25,000 was sold to J. J. Field for $100.

### Suit in Equity Filed.

On May 7, 1936, this litigation was started by the filing of a suit in equity by Crawford Arterburn against B. W. Stevens setting up and seeking to compel Stevens

to perform his contract (t) and to accept the deed tendered him [see (u), supra].

### Stevens Answers.

On May 16, 1936, B. W. Stevens filed an answer and cross-petition which denied only one of the allegations of fact in the petition and that is this:

"Defendant denies that plaintiff can convey to him a good fee simple title, excepting easements for power or telephone lines, water pipes or roads, and says that plaintiff obtained title to the said land by deed of Norbourn Arterburn and Sallie C. Arterburn, his wife, dated October 28, 1927, which said deed contained the following provision: *'To have and to hold the same under said second party with all the appurtenances thereunto belonging for and during his natural life, with power to said second party, namely, Crawford Arterburn, to sell and convey same if he sees fit, provided the conveyance is a bona fide one and made for a valuable and adequate consideration and at the death of said Crawford Arterburn (if not sold by him during his life) the same to become and be the property of said Crawford Arterburn's wife during her life (if he leaves a widow surviving him) with remainder after the death of said Crawford Arterburn (if said land is not sold during his life) and after the death of his wife, to the heirs of said Crawford Arterburn as they may be lawfully entitled.'* In the event the property is sold by Crawford Arterburn, the purchaser is not required to see to the application of the purchase money.

"Defendant says that by the terms of said deed the plaintiff obtained no more title than a life estate and cannot convey a greater title than the title granted to him; that under the power granted to plaintiff in said deed, any conveyance by plaintiff by virtue of said power must be a bona fide one and made for a valuable and adequate consideration, and that while his transaction with the plaintiff is a bona fide one and the price he agreed to pay for said acre of land, and for the three acres of land mentioned in the option, and for the entire tract of land as mentioned in the option are valuable considerations and are adequate considerations, the plaintiff does not have the right to decide what is a

bona fide conveyance or to decide what is a valuable or adequate consideration for such a conveyance; that by virtue of the power mentioned in said deed the plaintiff cannot convey less than the entire tract of land and has no power to convey the one acre thereof involved in this action or the three additional acres mentioned in the option, and that for these reasons the plaintiff cannot make a fee simple title such as is required by the agreement between defendant and plaintiff dated April 17, 1936.''

One of the averments of this answer is:

''Defendant says that he is ready and willing to accept the deed tendered with the petition and to pay for said land, provided plaintiff can convey to him a good unencumbered fee simple title to said one acre tract, and can grant him a valid option upon, and upon his exercise of said option can convey to him a good fee simple title to, said three acre tract and said entire tract.''

Defendant Stevens for cross-petition against ''Roby et al. Comm.'' alleged they were claiming some sort of interest in this ''123 acres'' by reason of the judgment (e), the levy of fi. fa. No. 32808 [see (i), supra], the sale under venditioni exponas No. 33169 and their purchase thereat, and their levy of fi. fa No. 33360 (s), and asked that they be made parties, that he be awarded process against them, that they be required to set up their interests, and that he have judgment against Crawford Arterburn for the $100 he paid, etc.

Answer, etc., ''Roby et al. Comm.''

On July 9, 1936, ''Roby et al. Comm.,'' having been served with process, filed their answer and cross-petition

They set up the judgment (e); their acquirement thereof (f); the issue of fi. fa. No. 32808 (h); the return of it with levy indorsed (i); the issue of venditioni exponas No. 33069, and its return (j); the issue of venditioni exponas No. 33169 and their purchase at the sale had thereunder (p); the issue of fi. fa. No. 33360 (r) and the levy thereof (s), the issue of fi. fa. No. 34187 and the levy thereof (v) and the issue of fi. fa. No. 34188 and its levy (w); they set up the allotment of a homestead of 2.387 acres to Crawford Arterburn, but fail to say when or by whom such allotment was made. They charged certain members of Arterburn's family were

contingent remaindermen and made them parties. We have learned by subsequent pleadings who these were and what their relationships are. The ones made parties are Norbourn Arterburn and Sallie C. Arterburn, the father and mother of Crawford Arterburn, a sister of Crawford Arterburn, viz., Katie Louise Arterburn Collins, together with her husband, H. A. Collins, and the following brothers of Crawford Arterburn, viz.: Bert Arterburn and his wife, Hazel, W. N. Arterburn and his wife, Caroline, and Paul Arterburn, a widower.

### These Arterburns.

None of these in their pleadings claim to be anything more than contingent remaindermen and admit they may be cut off should Crawford Arterburn exercise the power given him, or should die leaving heirs either begotten or adopted.

Multiplied and multifarious other pleadings finally developed these issues: (A) What is the proper construction of the deed (b), the part to be construed being set out in italics in the answer of Stevens supra? (B) What rights did "Roby et al. Comm." acquire by the levy of fi. fa. No. 32808 (h), supra? (C) What rights did Stevens acquire by his purchase (t), supra? (D) Is Stevens required to accept the deed (u) tendered to him?

### Answer to Question (A)

The pertinent provisions of the deed (b) are copied in italics in the answer of Stevens, supra, the first 23 words of which are:

"To have and to hold the same unto said second party with all the appurtenances thereunto belonging for and during his natural life."

Those words clearly show Crawford Arterburn acquired a life estate only, and that estate was not enlarged or extended by anything anywhere else in the deed. Crawford Arterburn is given by other language following these 23 words a power to sell and convey the remainder estate in this land, and the purchaser will not be required to see to the application of the purchase money; but a power is not property, it is akin to an agency, and if it be not exercised the estate of the donee is not enlarged. Slayden v. Hardin, 257 Ky. 685, 79 S. W. (2d) 11. Corpus Juris, 49, 1276, sec. 89, puts it this way:

"While a power may be coupled with an interest, or may be given to one having an interest or estate in the subject matter, a power does not of itself imply ownership, but, on the contrary, excludes the idea of any absolute interest or fee simple in the person possessing the power; nor does a power of itself give the donee or grantee any interest or estate in the property."

See, also McCullough's Adm'r v. Anderson, 90 Ky. 126, 13 S. W. 353, 11 Ky. Law Rep. 939, 7 L. R. A. 836. We will better understand this if we will look at this deed as a conveyance of a life estate to Crawford Arterburn and a power to John Smith to sell and convey etc. The rights and liabilities of Crawford Arterburn as grantee of a life estate is one thing and as donee of a power is quite another. Before the issue of fi. fa. No. 32808 (h), supra, Crawford Arterburn could have made a sale and conveyance of a fee-simple title to this property or any part of it, for as owner of the life estate he could sell that, and as donee of this power he could sell the remainder.

When, on February 15, 1935, this fi. fa. No. 32808 (h) was issued and placed in the hands of the sheriff eo instante, there fell upon the life estate of Crawford Arterburn as between him and the plaintiff in that fi. fa. a lien therefor. See section 1660 and section 1681, Ky. Stats. As to Stevens, a subsequent, purchaser, that would not apply (see section 2358a-2, Ky. Stats.) if he had no notice thereof, but the admissions in brief for Stevens show he had notice.

### Question (B)

"Roby et al. Comm.," by virtue of the issue of fi. fas. (h), (v), and (w) and their levy before the return day thereof, have liens on the life estate of Crawford Arterburn for the payment of those executions.

### Questions (C) and (D)

Stevens' contract is valid, and if it were not for fi. fas. (h), (v), and (w), he should be required to accept the deed tendered him (u), but as those fi. fas. are liens on this property, Arterburn cannot deliver to Stevens an unencumbered title; therefore Stevens should not be required to accept the deed tendered him and should have back the $100 he has paid.

The only limitations upon Arterburn's power to sell

in the deed are that the conveyance be a bona fide one and made for a valuable and adequate consideration, and it is provided that the purchaser need not look to the application of the purchase money.

It is clear that the grantor in the deed intended Arterburn to be the judge of the sufficiency of the consideration of any sale and conveyance made by him, and any deed or deeds so made, whether it be of the whole or any part of this 123 acres and whether made all at one time or at different times, reciting a valuable consideration, will import that the conditions above set out have been met, and such deed will be sufficient and pass a good title to the purchaser.

When Crawford Arterburn executes a deed purporting to convey a fee-simple title to the whole or any part of this property, his life estate passes because he owns that and has, under section 2341, Ky. Stats., power to convey it and the remainder passes because of the power given him in the deed from his father (b supra).

He may, if he sees fit, convey his life estate in the whole or any part of this property and never exercise this power, in which event it would die with him. See Slayden v. Hardin, 257 Ky. 685, 79 S. W. (2d) 11. Or he may convey his life estate to one person or persons and the remainder to another or others. There is no means, however, for him to rid himself of the liens on his life estate except to pay those debts and thus discharge them.

Crawford Arterburn's life estate is one thing, and his power to convey this remainder quite another and entirely separate and distinct from it, though he acquired both under the same deed.

The judgment appealed from is reversed upon both appeals, the court will set it aside, and will permit such further steps as are consistent with this opinion.

Judgment reversed.