YONKERS LODGE No. 707 OF THE BENEVOLENT AND PRO-
TECTIVE ORDER OF ELKS OF THE UNITED STATES OF
AMERICA, Respondent, *v.* JOHN J. CONDON et al., Con-
stituting the Common Council of the City of Yonkers,
et al., Appellants, and THE BOARD OF EDUCATION OF
THE CITY OF YONKERS, Respondent.

Argued October 8, 1941; decided November 27, 1941.

*Leonard G. McAneny, Corporation Counsel,* and *J. Raymond Hannon* for appellants. The provisions of subdivision 2 of section 879 of the Education Law (Cons. Laws, ·ch. 16) gave power to the Common Council and Board of Estimate and Apportionment of the city of Yonkers, to be exercised only in the discretion of those two city governing bodies, to create a funded debt to raise moneys for educational purposes referred to in paragraph c of subdivision 1 of section 877 of the Education Law, which power is now conferred on the Common Council alone. (*Board of Education* v. *Rogers,* 278 N. Y. 66.)

*Sydney A. Syme* and *Irving J. Bland* for petitioner, respondent. Subdivision 1 of section 879 of the Education Law expressly requires the Common Council to issue bonds. (*Matter of DeAngelis* v. *Laino,* 235 App. Div. 390; 260 N. Y. 661.) The Common Council, having approved the special estimate of the Board of Education and thereby authorized the execution of a contract, may not, in effect, abrogate such contract by declining to provide the neces-

sary funds. (*People ex rel. Holtzmann* v. *City of Schenectady,* 136 App. Div. 127; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo,* 123 App. Div. 141; *Lowe* v. *City of New York,* 240 App. Div. 484; 265 N. Y. 583.)

LEWIS, J.  The appeal is by permission of this court from an order of the Appellate Division which unanimously affirmed an order of Special Term directing the appellants, the Common Council of the City of Yonkers, forthwith to provide by ordinance for a bond issue to make available to the Board of Education the sum of $64,000 for the purchase from the petitioner of certain real property to be used for educational purposes.  The appellants contend that the statutes involved do not require that bonds be issued, but grant to the Common Council discretion to determine the mode of payment — whether to issue bonds or to provide the purchase price by taxes collected over a period of years, or otherwise.  The petitioner has thus far successfully maintained that the controlling statutes are mandatory and require the Common Council promptly to enact an ordinance providing for the issuance of bonds.

The petitioner Yonkers Lodge No. 707 of the B. P. O. E. is the owner of premises at 138 South Broadway in the city of Yonkers.  On November 9, 1939, pursuant to sections 875, subdivision 2, and 877, subdivision 8, of the Education Law (Cons. Laws, ch. 16), the Board of Education adopted a resolution declaring the necessity for the acquisition of petitioner's property for educational purposes. It estimated the cost at $65,000 and constituted the same a " special estimate."  Thereafter, on December 1, 1939, the Board of Estimate and Apportionment adopted a resolution approving the special estimate.  On December 26, 1939, the Common Council enacted an ordinance by which such special estimate was adopted and it was further provided that the special estimate " shall constitute a special tax budget and said amount shall be raised, levied and collected in twenty equal annual installments, together with such additional amount as may be necessary to pay the

interest on any bonds or other obligations of the city issued in anticipation of the said tax for said purpose."

On January 1, 1940, following the adoption by the electorate of a city manager form of government, a newly-elected Common Council took office, consisting of the appellants in this action. On January 10, 1940, the Board of Education entered into a written contract with the petitioner for the purchase of the premises for $64,000, payable in cash on February 9, 1940, or on such other date as might be set by the Comptroller. The new Common Council, however, failed to provide a bond issue and still refuses to do so.

The basis of the decision of Special Term, which has been affirmed, is found in the Education Law, sections 877, subdivision 1, paragraph c; 877, subdivision 8, and 879, subdivision 1, which provide, in part, as follows:

" § 877. * * * 1. * * * The board of education in each city having a population of less than one million shall prepare annually an itemized estimate for the current or ensuing fiscal year of such sum of money as it may deem necessary for the purposes stated in this section * * * Such estimate shall be for the following purposes: * * *

" c. * * *, the purchase of real property for new sites * * *."

" § 877. * * * 8. A board of education may, to meet emergencies which may arise, submit a special estimate in which items for extraordinary expenses may be submitted to meet such emergencies. Such estimate shall contain a complete statement of the purposes for which the items are requested and the necessity therefor. The same method of procedure shall be followed in submitting such estimate and such estimate shall be subject to the same consideration and action as is required in the submission, consideration and action upon the regular annual estimate submitted by a board of education. The common council in such a city shall have power to make the appropriations requested by a board of education in such special estimate. The common council of a city of the third class, the common council, the

board of estimate and apportionment of a city of the second class and, in a city having a population of four hundred thousand or more and less than one million, * * * the council may temporarily borrow the amount appropriated on city certificates of indebtedness or by the issuance of revenue bonds, or other municipal bonds, which certificates of indebtedness or bonds shall be payable at such time and in such manner as shall be provided by general laws or the charter of such city for other certificates of indebtedness or revenue bonds."

" § 879. * * * 1. When the common council or the voters of a city authorize an appropriation to be raised by a tax in installments for any of the purposes enumerated in paragraph c of subdivision one of section eight hundred and seventy-seven of this chapter, city bonds shall be issued in the same manner and under the same provisions as other bonds are or may be issued by such city. The principal and interest of such bonds shall be paid out of moneys raised by tax therefor in the same manner as other school moneys are raised * * *."

Summarizing these statutes, sections 877, subdivision 1, and 877, subdivision 1, paragraph c, together empower the Board of Education to provide an *annual* estimate for the purchase of real property for new sites; section 877, subdivision 8, authorizes the Board, in the event of emergency, to submit a *special* estimate in which items for extraordinary expense may be submitted, which special estimate shall be subject to the same consideration, action and procedure as is an annual estimate, and as to which the Common Council " shall have power " to make the appropriations requested; section 879, subdivision 1, provides that when an appropriation for any of the purposes mentioned in section 877, subdivision 1, paragraph c, is authorized, " city bonds shall be issued in the same manner and under the same provisions as other bonds are or may be issued by such city." It is the clause last quoted above with which this appeal is chiefly concerned.

The parties to this proceeding do not question the legality of the action taken by the Board of Education which declared the acquisition of petitioner's property a necessity and constituted the estimated cost a special estimate; nor is there challenge to the legality of either the approval of such special estimate by the Board of Estimate and Apportionment or the subsequent ordinance of the Common Council which adopted such special estimate as a special tax budget, and provided that the amount thereof should be collected in twenty equal annual installments, with interest on any bonds or other obligations which might be issued in anticipation of such tax.

Our inquiry is thus narrowed to the question whether, by the clause employed in section 879, subdivision 1, viz., " * * * city bonds shall be issued in the same manner and under the same provisions as other bonds are or may be issued by such city "— the Legislature intended to withdraw from the Common Council all discretion as to the method to be chosen by which the authorized special tax budget shall be financed. Stated otherwise — Is the statutory clause last quoted a legislative mandate that, in the circumstances now before us, the city's bonds *must* be issued?

The question suggests at once the argument, which might well be made, that such a mandate might jeopardise the city's financial position under the bonded debt limitation fixed by the State Constitution (Art. VIII, § 4). In that connection it has been said " * * * as to unusual and heavy emergency demands no department [of a city] should have the power to compel approval by the body upon which is placed the general responsibility for municipal financial safety." (*Matter of DeAngelis* v. *Laino*, 235 App. Div. 390, 396; affd., 260 N. Y. 661.)

We disregard that line of inquiry, however, finding, as we do, the solution of our problem in the language of section 879, subdivision 2, of the Education Law, which provides in part as follows: " In a city of the second class and in a city of the first class having a population of less than four hundred thousand, * * * the common council and the

board of estimate and apportionment, or other municipal authorities who were authorized and empowered under the laws in force prior to the eighth day of June, nineteen hundred and seventeen, to determine upon the *necessity* of issuing bonds for any of the purposes enumerated in paragraph c of subdivision one of section eight hundred and seventy-seven of this chapter, *shall continue to possess such power and may authorize, issue and sell bonds for any of the purposes so enumerated, in the same manner and with the same force and effect as prior to the said eighth day of June, nineteen hundred and seventeen.*" (Emphasis supplied.)

The date last mentioned, June 8, 1917, was the effective date of chapter 786 of the Laws of 1917 which added article 33-A to the Education Law (including sections 877 and 879). Prior to that date the law which governed appropriations for the purchase of sites for educational purposes by the Board of Education of the city of Yonkers was chapter 365 of the Laws of 1909, which provided in part: "After such approval the common council *shall have power from time to time,* by ordinance, which before it shall take effect shall be approved by the board of estimate and apportionment, *to authorize bonds of the city to be issued and sold in the manner provided by law* and the proceeds thereof applied to the payment of the cost of any such purchase * * * or to the payment of temporary loans or notes or certificates of indebtedness incurred or issued * * *." (§ 3.) (Emphasis supplied.)

The language of the statute last quoted is not mandatory. According to its provisions there rested in the Common Council a discretion to select the mode of city financing by which the cost of the project should be met. Although that statute was repealed by chapter 786 of the Laws of 1917, we construe the language of section 879, subdivision 2, as serving to retain in the Common Council the same discretion which it had before the enactment of article 33-A of the Education Law. (Cf. *Matter of DeAngelis* v. *Laino, supra,* pp. 393–396.)

In reaching that conclusion we have been influenced by statutory changes made by two successive Legislatures. When, by chapter 452 of the Laws of 1908, the Legislature revised the charter of the city of Yonkers and defined the duty of the Common Council in reference to the financing of land purchases recommended by the Board of Education, it directed (Art. IX, § 11) that " if there is insufficient money in the treasury applicable to such purposes the common council and the board of estimate and apportionment *must* cause bonds to be issued and sold * * *." Significant, we think, is the fact that the Legislature of the following year amended that provision of the city's charter by striking out the mandate that the Common Council " * * * *must* cause bonds to be issued * * *" and substituted therefor the permissive provision " *shall have power* from time to time, by ordinance, * * * to authorize bonds of the city to be issued and sold * * *." (L. 1909, ch. 365 [amending art. IX, § 11, of the Yonkers City Charter].) It is the amendment last mentioned which, within the language of section 879, subdivision 2, of the Education Law, was in effect " prior to the said eighth day of June, nineteen hundred and seventeen."

The orders should be reversed, with costs in all courts, and the application denied. (See 287 N. Y. 755.)

FINCH, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., LOUGHRAN and RIPPEY, JJ., dissent.

Orders reversed, etc.