YONKERS LODGE No. 707 BENEVOLENT AND PROTECTIVE ORDER OF ELKS et al., Plaintiffs, *v.* BOARD OF EDUCATION OF THE CITY OF YONKERS et al., Defendants.

Supreme Court, Westchester County, November 27, 1942.

*Sydney A. Syme* for plaintiffs.

*Leonard G. McAneny, Corporation Counsel,* for defendants.

WITSCHIEF, J. The Board of Education of the City of Yonkers duly adopted a resolution declaring that the acquisition of the clubhouse property of the plaintiffs was necessary for educational purposes, and estimated the cost of its acquisition to be $65,000. This resolution of the Board of Education was duly approved by the Board of Estimate and Apportionment. Following such approval the Common Council enacted an ordinance adopting the special estimate of the Board of Education and directing that the appropriation should constitute a special tax budget and that the amount should be raised, levied and collected in twenty equal annual installments together with such additional amount as may be necessary to pay the interest on any bonds or other obligations of the city issued in anticipation of the tax for said purpose. There is no dispute as to any of the foregoing facts. Thereupon a written agreement was executed by the plaintiffs and the Board of Education for the sale of the property to the city of Yonkers for $64,000, payable in cash on delivery of the deed on February 9, 1940, or on such other date as the Comptroller might set. Despite the efforts of the plaintiffs to consummate the contract by the delivery of the deed and the payment of the consideration, the city of Yonkers has thus far evaded performance on its part. On February 9, 1940, which was the law day, there was a mortgage outstanding which was a lien upon the property to the extent of $30,000 held by the trustees of the Police Pension Fund of the City of Yonkers and there were some taxes due the city of Yonkers which were unpaid. Except for these encumbrances the title was free and clear. The

plaintiffs were ready to deliver the deed on February 9, 1940, but depended upon the receipt of the purchase price for the funds with which to discharge the mortgage and to pay the taxes due. A local bank had agreed to advance the funds necessary for these purposes upon the receipt by it of the city's check for the purchase price. Or, the plaintiffs were willing to have the city hold out of the purchase price the amount necessary to pay the mortgage, interest and taxes. The plaintiffs have repeatedly demanded that a date for the closing be set. An action was brought to foreclose the mortgage held by the trustees of the Police Pension Fund which action was stayed pending the determination of this action. The plaintiffs instituted a mandamus proceeding to compel the issuance and sale of bonds to provide the funds necessary to complete the purchase but were finally defeated in this move by the decision of the Court of Appeals (*Yonkers Lodge of Elks* v. *Condon,* 287 N. Y. 44, reargument denied, 287 N. Y. 755) that the discretion of the Common Council, in selecting the mode of financing by which the cost of the project should be met, could not be controlled by the court. Then this action was brought. The result in the mandamus proceeding is not *res judicata* in this action because the issues of fact and questions of law presented in this action were not involved in that proceeding and could not have been. That proceeding sought to compel performance of what was claimed to be a ministerial act. This action is brought for specific performance of a contract. All that was decided in the mandamus proceeding was that the manner in which the city should raise the funds with which the Board of Education might complete its contract to purchase the property was not subject to court control. The only other defense to this action which is asserted in the brief submitted by the Corporation Counsel is that the contract between the plaintiffs and the Board of Education is not really a contract but is merely a memorandum of an agreement for the purchase of the property when the twenty annual installments have come into the treasury of the city and that the Board of Education had no authority to make the contract because there had been no appropriation for the amount necessary therefor. The claim of the Corporation Counsel seems to be that the ordinance adopted by the Common Council does not constitute an appropriation of the sum of $65,000 for the purchase of the property, but was " an appropriation * * * to be collected in twenty equal annual installments." Such a construction of the ordinance is unwarranted. The Board of Education had made a

special estimate for the purchase of this property and the Board of Estimate and Apportionment had approved such estimate. The ordinance adopted by the Common Council ratified and confirmed the special estimate and directed that it should constitute a special tax budget, and then further directed how the necessary funds should be raised. That constituted an appropriation of $65,000 for the purchase of the property and fully warranted the Board of Education in entering into a contract for such purchase. It detracts nothing from the fact of the appropriation that the Common Council further provided that the money should be raised in twenty annual installments, et cetera. The very wording of the ordinance indicates the purpose to issue obligations of the city in anticipation of the tax and the retirement of such obligations in twenty annual installments. The money having been appropriated the Board of Education was warranted in assuming that it would be made available by suitable action of the Common Council in the issuance and sale of obligations of the city. Lest there might be some delay in the issuance and sale of the obligations the closing date was made subject to direction of the Comptroller. The contract itself required the payment of the purchase price in cash on delivery of the deed, not in twenty equal annual installments. There is a suggestion in the brief of the Corporation Counsel, but no special point seems to be made of it, that the contract for the purchase of the property is ineffective because the Corporation Counsel had failed to endorse thereon a certificate as required by section 204 of the Second Class Cities Law. That section has no application to a contract made by the Board of Education. The Board of Education is not a department of the city government. (*Matter of Divisich* v. *Marshall,* 281 N. Y. 170.) As was held in that case, the appropriation necessary for the purchase of the property having been made, the expenditure of the money was vested solely in the Board of Education. Ordinarily a seller must have discharged all encumbrances before tendering a deed and may not impose on the buyer the burden of procuring satisfaction of the encumbrances. (*Webster* v. *Kings County Trust Co.,* 145 N. Y. 275.) No objection has ever been made by the defendants that the title tendered was not in accordance with the contract or that acceptance of the deed was refused because of the existence of the encumbrances. It is evident that the plaintiffs were ready to clear the title of the encumbrances if the defendants were ready to perform on their part. (*Keating* v. *Gunther,* 10 N. Y. S. 734, affd. 129 N. Y. 659; *Penn. Steel Co.* v. *Title Guar. & Trust Co.,* 193 N. Y. 37.)

The mortgage on the property was held by an arm of the city government and the taxes were due the city so that no difficulty could possibly arise in either respect, as both encumbrances were controlled by the city. It is clear that the defendants would be entitled to maintain an action for specific performance if the plaintiffs were refusing to convey, and it is equally clear that the same remedy is available to the plaintiffs. A municipal corporation must perform its contract just as an individual must perform his. (*Blum* v. *City of Rochester,* 136 Misc. 287, affd. 230 App. Div. 879.) It is not questioned that the acquisition of the property is necessary for educational purposes, and it is not disputed that the Board of Education is in possession of and is using the property for educational purposes under a lease which involves an annual rental of $5,400. No claim is made of any fraud, collusion or overreaching in connection with the transaction. Both equity and justice demand that the Board of Education complete its purchase. Judgment, is, therefore, awarded in favor of the plaintiffs for specific performance of the contract of purchase and sale; and for judgment against the Board of Education of the City of Yonkers for the purchase price of $64,000 less the amount due the trustees of the Police Pension Fund as of February 9, 1940, for the principal and interest upon the mortgage, and less all taxes unpaid on that date, such balance to be agreed upon by counsel, or, if counsel are unable to agree, that the amount due to such date for principal and interest upon the mortgage and for unpaid taxes be ascertained and judicially determined by an official referee, and the balance of the purchase price due the plaintiffs as shown by such accounting be determined and that the plaintiffs have judgment for such balance; and that plaintiffs have such judgment upon delivery to the County Clerk of Westchester County of a duly executed deed in conformity with the contract, such deed to be held by the County Clerk of Westchester County subject to the directions of the Comptroller.