42 So.2d 505

### JOHNSON et al. v. MALONE.
### 8 Div. 435, 436.

Supreme Court of Alabama.
Oct. 13, 1949.

Hutson & Russell and S. A. Lynne, all of Decatur, for appellant Johnson.

Thos. G. Steele, of Athens, for appellants Andrews & Wellden.

Thos. S. Woodroof, of Athens, for appellees Tucker.

Malone & Malone, of Athens, for appellee Malone.

SIMPSON, Justice.

Bill of interpleader by the Hon. W. W. Malone, Jr., as stakeholder of earnest money paid at an auction sale of real estate, against appellant Johnson (who bid in the property); against the Tuckers, owners and vendors of the property; and against Andrews and Wellden, ·the auctioneers who claimed commissions out of the deposit for having made the sale.

All defendants filed separate answers and cross-bills. Johnson seeks the return of the earnest money on the ground that the terms and conditions of the sale were

612

not complied with, which privileged him under its terms to a refund of his money. The Tuckers claim the entire amount of the earnest money as a forfeiture by way of liquidated damages for Johnson's failure to consummate the transaction, and the auctioneers are claiming—against the contention of the Tuckers—that they are due full commissions out of the deposit money for their services in making the sale.

On a hearing below, the court decreed against Johnson, awarded the earnest money to the Tuckers, but allowed ratable commissions to the auctioneers and attorney's fees to complainant for filing the bill, payable from said fund.

The reporter may note, as necessary, the several matters of contest here, but from the view we entertain it will be necessary to notice in the opinion but two propositions, namely, (1) whether a case is made for an interpleader against the asserted demurrer, and (2) whether the appellant, Johnson, was entitled to a refund of his money. On a careful consideration of the various aspects of the case in the light of what we regard as firmly settled governing authorities, we have found it necessary to resolve both questions in the affirmative and will discuss them in order.

(1)

The bill was one of strict interpleader and it is argued that error prevailed in the action of the lower court in overruling the ground of demurrer taking the point that the bill failed to disclose perfect disinterestedness on the part of stakeholder Malone, the complainant, as regards the respective claimants of the fund. The heretofore prevailing rule that the complainant must entertain such a position toward the respective claimants no longer obtains. The former statute, Code 1923, § 10390, now Equity Rule 36, Code 1940, Title 7, Appendix, has been enlarged and, inter alia, the proviso has been added that: "It is not ground for objection to the action that the claim of the several claimants or the titles on which their claims depend do not have a common origin or are not identical, but are adverse to or independent of one another, or that the plaintiff avers that

he is not liable in whole or in part to any or all of the claimants."

Hence, it appears that the same principle governs in such proceeding as in one in the nature of an interpleader, where it is not required as a prerequisite to filing the bill that the complainant stand indifferent toward the respective claimants as an innocent depository of the fund.

(2)

As regards the second proposition, research will disclose that the law on this question is replete with casuistries, but, as we read them, our own cases—and there are authoritative ones elsewhere too —are so conclusive to a result contrary to that attained below that we must hold the decree forfeiting the money to have been laid in error.

The following quotations from the evidence in the record proffered in behalf of the respective claimants (except Johnson), with certain parentheses of our own, will suffice to indicate the terms and conditions of the sale.

"The property will be sold to the highest bidder."

"Nothing was being held back." (R. 17, 22)

(No mention that the property was encumbered.)

"The purchaser would pay 20% of purchase price immediately." (R. 17, 22)

"The balance within ten days' time upon delivery of abstract and deed."

"An abstract of title showing merchantable title will be available to purchaser on Saturday following sale." (November 29th) (R. 31)

(Abstract furnished appellant's attorney on Friday morning, December 5th, though available at attorney's office prior to that date.)

"If purchaser fails or refuses to comply with his bid for any reason other than failure of the abstract to show merchantable title, this 20% shall be forfeited to seller as liquidated damages." (R. 18)

"If abstract of title so furnished does not show good title, the money is to be returned." (R. 75)

(Preserved right of purchaser to refuse to consummate sale and procure the return of earnest money upon failure of abstract to show merchantable title.)

"The sale must be or the transaction must be completed within ten days" (showing that time was made the essence of the sale and its closure). (R. 73)

■ Thus by the terms of the contract it was required that the Tuckers furnish Johnson with a perfect record, merchantable title and an abstract furnished or made available showing same, and the contract could not be modified by delivering an imperfect title or an abstract failing to disclose a perfect marketable title. Whitfield v. McClendon, 251 Ala. 591, 38 So.2d 856.

■ The sale was cried Wednesday, November 26th, and the appellant became the highest bidder for the property and he deposited the earnest money with the understanding that complainant Malone should hold the money until consummation of the transaction. The abstract of title was not completed until about noon of December 4th and was not furnished to the appellant until the morning of December 5th. The abstract failed to exhibit a marketable title in the Tuckers. Among the defects which Johnson's attorneys pointed out after a hasty and cursory examination were the following unsatisfied liens against the property:

Mortgage in favor of C. E. Poole, the indebtedness amounting to approximately $19,100.00. (R. 68)

A recorded judgment in favor of Louis Namie for $800.00 and court costs.

A tax lien in favor of the State of Alabama (sales tax) amounting to $110.84.

A lien in favor of the U. S. Government (a tax lien) amounting to approximately $347.52. (R. 40)

In addition to the above, there was also a lien for the State and County taxes for the year 1947, past due and unpaid, amount not known, and

A lien for State and County taxes for the year 1948, the amount not known.

There were perhaps other defects in the record as exhibited by the abstract, and pointed out here in argument of appellant, which likewise might have stood in the way of complete fulfilment of the contract on the part of the Tuckers to furnish the character of abstract contracted for, but we will lay aside consideration of these, since one paramount defect was never cured, viz.: the unsatisfied Poole mortgage, first above noticed.

The appellee contends, and presumably the trial court accepted the theory, that Johnson was required to pay the balance of the purchase price for the property without the completion of the abstract exhibiting a perfect record title free of encumbrances or without the record so showing, and that his money could be used to satisfy the Poole mortgage. In this, on the authority of our decided cases, we are impelled to disagree. In essence, the vendors contended for a modification of the contract by insisting on the payment of the balance of the purchase price on the naked promise of the vendors and perhaps the mortgagee too that when paid the mortgage would be released and the record satisfied. We cannot agree that the law could operate to bring about that result. The mortgage, at closure date, was —in fact still was when suit filed—outstanding and no abstract was furnished as stipulated by the contract and the vendee was within his rights to decline to proceed further and demand a return of the earnest money.

Before noticing what we regard as controlling authorities, it should first be observed that this is not a case of specific performance where under certain prevailing circumstances with respect to the individual case, it has been held that equity will decree specific performance and allow satisfaction of an existing encumbrance on the property out of the purchase price to be paid, under its general power to so mold the decree as to properly adjust all equities and protect the rights of all parties. Such cases are the ones mainly relied on to sustain the decree of the lower court and which support such texts as carried in 57 A.L.R. 1378 and 55 Am.Jur. 685, § 227, holding to the general effect that "the mere existence of an encumbrance at the time fixed for performance by the vendor does not *necessarily* entitle the purchaser

to rescind or to refuse to perform on his part." (Emphasis supplied)—55 Am.Jur. 685, § 227. We have emphasized in the quoted·phrase because even in equity, where specific performance is awarded in certain cases, the law is not too certain and by and large most of the cases which hold to this equitable theory are watered down by many qualifying facts, such as where the vendee acquiesces in the vendor's delay, thus achieving a modification of the strict terms of the contract, or where many other aspects are cognizable in equity which would not be pertinent in a possessory action for a refund of earnest money. Then others, heavily relied on to sustain the decree, are such as Keepers v. Yocum, 84 Kan. 554, 114 P. 1063, Ann.Cas.1912A, 748, a case of specific performance, where note was taken in the opinion of the fact that the contract did not provide for the furnishing of an abstract or a good record title; or then, in other cases, the contract was silent as regards this feature.

In proceedings in equity, a wider latitude is permitted in enforcing executory contracts of sale, and if it appears that the encumbrances can be satisfied out of the balance due on the purchase price, time not being of the essence of the contract, the court will permit this to be done provided the furnishing of an abstract showing a marketable title or a title free of encumbrances was "not made a condition precedent to the enforcement of the contract; and it is clear upon the face of it that the balance to be paid in cash * * * will be much more than sufficient to pay * * *." Eaton v. Sadler, 215 Ala. 161, 165, 110 So. 10, 13. Such was noticed in this Eaton v. Sadler case, supra, and a distinction there drawn as regards Isom v. Johnson, 205 Ala. 157, 159, 87 So. 543.

Most, if not all, of the cases granting such relief by way of specific performance, however, concede that the right thereto is affected by whether time is of the essence of the contract, the furnishing of an abstract showing a clear title was one of the conditions on which payment was due to be made, and whether the delay had operated to the prejudice of the vendee.

■ ·This, however, is not a proceeding for specific performance where the court can superintend·the actions of the parties. Though in equity, it is because the statute makes it so, but the basis on which the respective claims are tried and determined are governed by those principles which govern possessory actions. "The court in such case should dispose of the money in its keeping on * * * such principles as are customarily recognized and enforced in both courts of law and equity with respect to the ownership of money or the right to money." McDonald v. McDonald, 212 Ala. 137, 143, 102 So. 38, 43, 36 A.L.R. 761. Each claimant is asserting rights either to all or a part of the forfeit money, and each has the burden of establishing that claim. If a recovery be due vendee, it must rest on the strength of his own title rather than on the weakness of the adversary. McCall v. Morgan, 244 Ala. 472, 14 So.2d 374; Phillips v. Phillips, 240 Ala. 148, 198 So. 132. There is no field here for bringing into operation of equity's remedial powers of doing justice between all parties and superintending and directing their conduct. Here the court is called upon merely to construe a contract according to its terms and to determine the rights of the respective parties thereunder.

■ In actions to recover earnest money, as against the claim of the vendor of a forfeiture, the rule, we think, to be deduced from the mass of reported adjudications, using our own to headlight them, is that to comply with the contract to furnish a marketable title and an abstract exemplifying the same, as a condition precedent to the vendee paying the purchase price, time being of the essence, the vendor must furnish a title free from encumbrances and an abstract so showing at the time fixed for consummation of the sale, and if the vendor's title is encumbered it will be his duty to make good his contract and perfect his title and exhibit his abstract so showing by the date set for closing and if he breaches this condition and the vendee, because thereof, elects to rescind, the vendor cannot thereafter relieve himself of the effect of his own default and the vendee may sue for the recovery of the earnest money. If this is to be criticized as a harsh rule, a complete answer is that it is but adhering to the terms of the contract as made and the

difficulty could have been eliminated by a different contract, to the effect that the vendee advance the necessary amount at closing to enable the vendor to satisfy the mortgage indebtedness, etc.

As was observed in the Massachusetts case of Weiner v. Simons, 267 Mass. 327, 166 N.E. 765, 766, "the defendants [here Johnson] were entitled to have what they contracted for. They [Johnson] cannot be required to accept something different. They could stand on the contract as made."

■ On the question of marketable title, American Jurisprudence states the generally accepted definition:

" * * * the terms 'good title,' 'marketable title,' and 'perfect title' are regarded as synonymous and indicative of the same character of title. To constitute such a title the validity of the title must be clear * * * " 55 Am.Jur. 620-621, § 149.

"The obligation of the vendor in a contract for the sale of land, in the absence of any provision or stipulation to the contrary, is to convey a good or marketable title, and this obligation cannot be satisfied by an offer to convey an estate subject to outstanding encumbrances; * * * the vendor, under his obligation to furnish a good or marketable title, is bound to furnish a title that is free from encumbrances * * * " 55 Am.Jur. 684, § 226.

■ This was the title here contracted for and the abstract so to exhibit and the vendor having failed to perform this dependent obligation, the plaintiff was entitled to rescind and recover the earnest money without tendering any part of the purchase price due. Nicolopoolos v. Hill, 217 Ala. 589, 117 So. 185, 59 A.L.R. 185; Whitfield v. McClendon, 251 Ala. 591, 38 So.2d 856.

The Nicolopoolos case, supra, is of much factual similarity to the case in hand and we regard it as decisive of the question considered. We quote the following pertinent language:

"Appellant insists that the cash payment required being sufficient to remove the mortgage incumbrance, the purchaser was required to pay it upon proper arrangement to satisfy the mortgage therewith and so obtain the title he bargained for. * * *

"In the case at bar the purchaser stipulated not only for a good title, but for evidence of same by abstract of title, and, in case it was found defective, the vendor covenanted to cure it, and furnish him a good title.

"We can only construe this to mean that such should be the status of the title when the dependent covenants to pay and to make title became operative. Further payment was conditioned on furnishing a clear title. There can be no duty to make tender where there is no duty to make payment.

"To make payment and receive a conveyance at the same time necessarily meant to receive a defective title for some appreciable time, leaving it to the vendor to clear it by the use of the money paid by the vendee, or enter into an arrangement to handle the matter through a trustee. In either event, the contention of appellant leads to an enforced modification of the contract. To require the purchaser to pay the money wherewith to remove the incumbrance is to shift to him the burden of the vendor."—217 Ala. 591-592, 117 So. 187.

The Whitfield v. McClendon case is of more recent date and also strikes at the heart of the governing principle, where it was said:

"By the terms of the contract the 'earnest money' was to be refunded to the vendee if the vendors did not furnish him with a complete abstract of title disclosing that they had a good and merchantable title to the premises * * *. The contract contained no provision for an opportunity to be given the vendors after furnishing such an abstract thereafter to amend it or cure defects in the title. The furnishing of such an abstract was, therefore, one of the terms of the contract, the observance of which was as essential as that of any other term or condition stipulated to be performed. * * *

"If the abstract, when it was furnished was not of the character required by the contract, then the vendee had the right to rescind the contract and insist upon a refund of the 'earnest money' paid by him as a part of the purchase price. * * *

"Where the contract calls for a complete abstract showing a good and mer-

616

chantable title, the abstract itself must furnish the evidence that the vendor has that character of title as a matter of record. * * *" 251 Ala. 593-594, 38 So.2d 858.

Competent authorities elsewhere which are persuasive to the same result are such cases as. Hardin v. Union Mutual Life Ins. Co., 222 Iowa 1283, 271 N.W. 176; Webster v. Kings County Trust Co., 145 N.Y. 275, 39 N.E. 964; Clearing Realty Corp. v. Pollaci, 133 Misc. 626, 233 N.Y.S. 136; Mahamey v. 580 Madison Avenue, Inc., 135 Misc. 603, 238 N.Y.S. 651; Greenberg v. Lannigan, 263 Mass. 594, 161 N.E. 882; Gepo Realty Corp. v. Pierce, Sup., 25 N.Y.S.2d 25, affirmed 286 N.Y. 641, 36 N. E.2d 687; Roby v. Arterburn, 269 Ky. 816, 108 S.W.2d 873; Higgins v. Kenney, 159 Ga. 736, 126 S.E. 827, 40 A.L.R. 685; Taylor v. Williams, 2 Colo.App. 559, 31 P. 504; Weiner v. Simons, 267 Mass. 327, 166 N.E. 765; Crutcher v. Aiken, Tex.Civ.App., 252 S.W. 844; Alling v. Vander Stucken, Tex. Civ.App., 194 S.W. 443; Johnson v. Herbst, 140 Minn. 147, 167 N.W. 356.

We note the following apposite statement in the Hardin v. Union Mutual Life Ins. Co. case, supra, 222 Iowa 1283, 271 N.W. 179: "* * * the furnishing of the abstract under Exhibit A was a condition precedent to the parties proceeding further under- the contract. The abstract submitted showed material defects and was not in compliance with the call of the contract. The plaintiff was entitled to a merchantable title exemplified by and epitomized in the abstract * * *. The defendant having failed to perform this dependent obligation, plaintiff was entitled to rescind the contract and recover the amount paid on the purchase price without tendering that part of the purchase price due * * *."

So we say here the vendors contracted to furnish or make available to appellant an abstract exhibiting a marketable title. This they did not do, apparently could not do without the use of appellant's money, thus entitling him to rescind the contract and recover the deposit.

A strong analogue supportive of our conclusion and exemplifying the rule as regards this character of contractual obligation is found in the case of Webster v. Kings County Trust Co., supra, decided by the highest court of New York. There the contract, rather than one to deliver an abstract showing a merchantable title, was one to convey title free from encumbrances. In disposing of the contention, as made in the instant case, that the purchaser should pay or tender the balance of the purchase price before the vendor had performed his dependent obligation to deliver the title free of encumbrances, that court said: "* * * a contract to convey land free from incumbrance would not be satisfied by a tender of a conveyance subject to unsatisfied or unpaid mortgages, although the purchaser was permitted to deduct an equivalent from the purchase money. The vendor, under such a contract, cannot impose upon the purchaser the burden of paying the mortgages and procuring their satisfaction, even though the mortgages are presently due and payable. * * *" 39 N.E. 966.

The principle is now firmly settled in that jurisdiction in the following cases. Clearing Realty Corp. v. Pollaci, supra; Mahamey v. 580 Madison Avenue, Inc., supra; and Yonkers Lodge No. 707 etc. v. Board of Education, 179 Misc. 834, 39 N. Y.S.2d 157, 160.

The Mahamey case, supra, is so apposite to the case in hand and expressive of our views as to the governing principle that we take the liberty of extracting the following quotation therefrom:

"The question is therefore presented whether the vendor could place the vendee in default by tendering a title subject to an unsatisfied mortgage of $100,000 and interest, merely because the mortgagee was assumed to be present at the closing with the satisfaction piece, ready to turn it over upon payment of the amount due on the mortgage.

* * * * * *

"* * * It does not follow * * * that the mere presence, at the closing, of representatives of the lienors with duly executed satisfactions in their possession, is sufficient, in itself, to place the vendee in default. The latter [purchaser] cannot properly be expected to pay the entire purchase price in return for a conveyance of

property incumbered by unsatisfied liens and trust to the vendor's using the purchase money to obtain the satisfactions from the lienors and to the vendor's thereafter turning the same over to him. As the Court of Appeals well said in Morange v. Morris, 42 N.Y. 48, at page 51 [3 Keyes 48]: 'In the present case the vendor was unable to perform his agreement, for the reason that the premises were incumbered with the liens for taxes and assessments admitted in the answer. * * * The plaintiff was under no obligation to pay his money to the vendor, and trust to a remedy by action for damages in case the vendor failed to remove the incumbrances. It was the duty of the defendant to have caused them to be discharged before the time arrived at which he had stipulated to convey.' * * *

* * * * * *

"* * * The vendor concededly intended to use the purchase money payable by the vendee to obtain the satisfaction from the mortgagee's representative. It is quite improbable that the latter would have surrendered the satisfaction before the amount unpaid on the mortgage was tendered to him, had the vendor made a request to that effect. In short, the vendor was unable to make the required tender, and would have been unable to make it, as far as the record shows, even if she had obtained an adjournment. This difficulty could have been avoided had a provision been inserted in the contract that the vendee was to advance the amount of the mortgage to enable the vendor to satisfy the same at the closing." 238 N.Y.S. 654–656.

Illustrative of the principle also is the Massachusetts case of Greenberg v. Lannigan, 263 Mass. 594, 161 N.E. 882, where the following is in the first headnote: "Where vendors agreed to convey premises by good and sufficient deed free from all incumbrances, tender of deed prior to securing discharge of mortgages constituted a breach of contract by vendors entitling purchaser to recovery of earnest money, though vendors had in their possession discharges of the mortgages which they were authorized to record as soon as they received the purchase price, and

though purchaser could not at the time of his performance have paid the purchase price if a proper deed had been tendered."

Something has been said in brief about the motive of appellant in rescinding his contract. The same argument was presented in the Whitfield case, supra, and regarded as untenable. As exemplifying the rule, we quote. from Crim v. Umbsen, 155 Cal. 697, 103 P. 178, 180, 132 Am.St.Rep. 127, 132: "We cannot consider the motives which prompted respondent to rescind the contract of sale. * * * He was entitled to rest upon the provisions of the contract, whether or not his real purpose' was to avoid taking and paying for a tract of land that had depreciated in value. In determining his rights we must only consider the title as it existed at the time fixed for the performance of the contract and the delivery of the conveyance. * * *"

The decree forfeiting the earnest money is reversed and one will be here rendered sustaining the claim of the appellant for the refund thereof, except that we will invoke our discretion under the rule, Equity Rule 36, supra, and affirm the lower court in granting an award from the fund of the solicitor's fees to the complainant for filing the bill.

Affirmed in part and in part reversed and rendered.

BROWN, FOSTER, LIVINGSTON and LAWSON, JJ., concur.