LESLIE N. SIMPSON et al., complainants-respondents,

*v.*

ERNEST C. KLIPSTEIN, defendant-appellant.

[Argued June 19th, 1918.   Decided November 18th, 1918.]

1. Under a contract to convey real estate "by a good and marketable title free and clear of all encumbrances," the vendor is bound to have and tender a title free from encumbrances, and dependent for its validity upon no doubtful questions of law or fact. The title must be such as to make it reasonably certain that it will not be called into question in the future so as to subject the purchaser to the hazard of litigation with reference thereto.

2. The conveyance of a lot by reference to a map made by the vendor, and filed in the proper public office, describing the lot as bounding on a designated street, shown on the map, constitutes a dedication to public use of that street as laid out thereon.

3. A dedication of a proposed street across land, made by conveyance by reference to a filed map, is a cloud upon the title, justifying a proposed purchaser, entitled to a "good and marketable title free and clear of all encumbrances," in refusing to take title in the absence of a vacation of such street, even though the street has never been opened or

formally accepted by the municipal authorities, and that is so because, after such a dedication of the street to public use there exists the right of the public to appropriate the street at any time when their wants or convenience require it.

4.. Where the doubt as to the validity of a title is one of fact, the court never compels a purchaser to take the title where the fact is too doubtful to be settled without litigation and all the parties interested are not in court.

5. The fact that the purchaser of lands, before making his contract for a "good and marketable title free and clear of all encumbrances," saw a map thereof showing a paper street (of which there were no physical indications on the ground), does not constitute a waiver of objections to the title because of the public servitude created by the dedication of the street to public use by conveyance by reference to such map, or estop the purchaser from insisting upon a marketable title free from encumbrance.

6. The fact that pending the closing of the title, the purchaser, at the request of the vendor, took and retained possession of the property until the deed therefor was tendered and rejected because of defect in the title, does not constitute a waiver of his contract right to a "good and marketable title free and clear of all encumbrances," when it appears that whilst in possession he did nothing but what one so entrusted with the property was bound to do, and immediately tendered possession to the vendor upon learning of the defect.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lane, whose opinion is reported in *88 N. J. Eq. 229*.

*Mr. Frederick Seymour* and *Mr. Borden D. Whiting,* for the appellant.

*Mr. Martin Conboy* (of the New York bar) (*Messrs Griggs & Harding* on the brief), for the respondents.

The opinion of the court was delivered by

TRENCHARD, J.

The bill in this case is to compel the specific performance of a contract for the sale of real and personal property signed by "Midvale Chemical Works, by George W. Hunter and Leslie N. Simpson, trustees" (vendor), and Ernest C. Klipstein (vendee). The contract was made May 29th, 1917, and immediately thereafter the vendor delivered to the vendee possession of the prop-

erty. The agreement provided for the delivery of the deed for the real estate on June 20th, and the time was extended to July 3d by mutual consent. On this latter date the trustees tendered a deed which was refused by the defendant, who thereupon tendered possession of the property to the trustees, which tender was refused. On July 6th a fire occurred on the premises which destroyed a part of the buildings. The trustees then filed this bill which resulted in a decree for specific performance and from it the defendant appealed.

We are of the opinion that the decree was not justified under the evidence.

The defendant declined to accept the deed tendered for the reason, among others, that the complainants' title was encumbered by various easements, and he now contends that the decree for specific performance was not justified for that reason.

We think that such contention must prevail, and have therefore found it unnecessary to examine and decide any other question.

The contract provided, among other things, for the sale and conveyance by the party of the first part to the defendant of

"all of its real property, consisting of two parcels of land situate at the intersection of the Long Branch division of the Central Railroad of New Jersey at Bayway avenue, in the section known as Bayway, Elizabeth, New Jersey, one fourteen twenty-two hundredths acres, and the other two ninety-two hundredths acres, total, seventeen fourteen hundredths acres, being the property on which the chemical plant of the party of the first part is located, * * * by good and marketable title free and clear of all encumbrances,"

excepting certain specified mortgages.

Putting out of view the mortgages specified (with which we are not concerned) under such a contract the vendor was bound to have and tender a title free from encumbrances, and dependent for its validity upon no doubtful questions of law or fact. The title must be such as to make it reasonably certain that it will not be called into question in the future so as to subject the purchaser to the hazard of litigation with reference thereto. *Vreeland* v. *Blauvelt, 23 N. J. Eq. 483; Methodist Episcopal Church* v. *Roberson, 68 N. J. Eq. 431; Van Riper* v. *Wickersham, 77 N. J. Eq. 232.*

35

Such a title the vendor did not tender and did not have.

The deed tendered to the defendant contained this provision: "This conveyance is made subject to the public and private rights in streets and avenues crossing or bounding the hereinabove-described premises."

The property in question, while for convenience described in the contract and deed as two lots, was in fact one single piece of property designed for manufacturing purposes, the two lots adjoining one another.

Now, it appears that in 1859 a former owner of the tract, of which the lands in question were a part, made a map thereof (known as the "Bayway map") and filed it in the county clerk's office, and later conveyed a lot by reference to such map, describing it as bounding on Brighton street, shown on the map. That constituted a dedication to public use of Brighton street as laid out thereon. *McAndrews & Forbes Co.* v. *Camden, '78 N. J. Eq. 244; Camden* v. *McAndrews & Forbes Co., 85 N. J. Law 260; Clark* v. *Elizabeth, 40 N. J. Law 172; Pope* v. *Town of Union, 18 N. J. Eq. 282.*

True, it appears that the street had not been opened nor formally accepted by the municipal authorities, but, nevertheless, its dedication by sale with reference to the filed map constitutes a cloud upon the title entitling the vendee to refuse to take title in the absence of a vacation of such street (*McAndrews & Forbes Co.* v. *Camden National Bank, 87 N. J. Law 231; Vogt* v. *Mullen, 82 N. J. Eq. 452; Agens* v. *Koch, 74 N. J. Eq. 528*), because after such a dedication of a street to public use there exists the right of the public to appropriate the street at any time when their wants or convenience require it. *Trustees of M. E. Church* v. *Hoboken, 33 N. J. Law 13; Hoboken Land, &c., Co.* v. *Hoboken, 36 N. J. Law 540; South Amboy* v. *New York and Long Branch Railroad Co., 66 N. J. Law 623; McAndrews & Forbes Co.* v. *Camden, supra.*

But the complainants contend that Brighton street was vacated in 1915. We do not so read the record. It appears that in 1869 another map of the same tract was made and filed. This map is known as the "Commissioner's map." Brighton street

appeared thereon but the lines thereof do not coincide by some twenty-five feet with the lines of Brighton street as it appears on the "Bayway map." It further appears that in 1915 the complainants asked the board of public works of Elizabeth to vacate Brighton street, as shown on the "Bayway map," and also as shown on the "Commissioner's map." The board, with both petitions before them, finally adopted an ordinance which purports to vacate the street, as shown on the "Commissioner's map," but does not vacate, nor purport to vacate, the street as shown on the "Bayway map." That the complainants themselves did not regard Brighton street, as shown on the "Bayway map," as vacated by that proceeding is indicated by the admission of one of them, to the effect that it had not been vacated, made after the contract in suit was signed and while the closing of the title was being discussed.

It also appears that the validity of the alleged vacation proceedings depends upon doubtful matters of fact, and in such case, of course, the court will not compel a purchaser to take title where, as here, the fact is too doubtful to be settled without litigation and all the parties interested are not in court. *Kohlrepp* v. *Ram,* *79 N. J. Eq. 386; Richards* v. *Knight,* *64 N. J. Eq. 196.*

The fact that the defendant before making his contract saw the map showing the paper street (of which there were no physical indications on the ground) does not constitute a waiver of objections to the title because of the public servitude created by the dedication of the street to public use by conveyance by reference to such map, or estop the defendant from insisting upon his contract right to a "good and marketable title free and clear of all encumbrances." *Propper* v. *Colson, 99 Atl. Rep. 385; McAndrews & Forbes Co.* v. *Camden, supra; Delong* v. *Spring Lake, 72 N. J. Law 125; Demars* v. *Koehler, 62 N. J. Law 203.*

But this is not all. The complainants' title appears also to be encumbered by Clifton street and an unnamed street. While neither of them are opened or used, both are delineated upon the "Commissioner's map." It is not disputed that both were dedi-

cated to public use. Neither of them were mentioned in the alleged vacation proceedings, and it is not contended that either has been vacated. The complainants' contention with respect to them is that they are not on any part of the land in question. But this contention is not well founded in fact. They cross the two ninety-two hundredths acre tract, running north to the Elizabeth river, and most likely seriously impair its usefulness for the defendant's purposes.

The fact that pending the closing of title the defendant took and retained possession of the property until the deed therefor was tendered and rejected, does not work a waiver of his contract right to a "good and marketable title free and clear of encumbrances." He took and retained such possession at the request of the complainants in order to keep the plant going, and upon rejecting the deed immediately tendered possession to the complainants, and throughout did nothing but what one so entrusted with the property was bound to do in order to take care of it.

Without looking into other alleged defects in the title, it seems clear that the title tendered by the complainants by a deed which expressly provided that it was "made subject to the public and private rights in streets and avenues crossing or bounding" the property in question, did not conform to the obligation of the vendor, for the reason that it tendered a law suit to defendant.

The decree below will be reversed, with costs.

*For affirmance*—BERGEN—1.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—12.