## No. 11,771.

RULE *v.* LINK, ET AL.

Decided May 28, 1928.

Mr. S. Harrison White, Mr. Otto Moore, Messrs. Cunningham & Foard, for plaintiff in error.

Mr. James C. Lang, Mr. John H. Voorhees, for defendants in error.

*Department Two.*

Mr. Justice Campbell delivered the opinion of the court.

This action by plaintiffs Link and Kerr against defendant Rule is for recovery of possession of a section of farm lands which plaintiffs had, by written contract, agreed to convey to the defendant; for $5,000 damages for wrongfully withholding possession of the same; for the further sum of $2,500, the value of the use and occupation thereof. The defendant, after denying the wrongs alleged in the complaint, in his answer set up a counterclaim for damages in the sum of $2,460 for failure of the plaintiffs to carry out the sale contract. Upon the issues joined there were two separate verdicts: one was for plaintiffs against the defendant for $2,000; and upon defendant's counterclaim for $2,460, the second verdict was for the plaintiffs; and thereupon the court, on plaintiffs' motion therefor, rendered judgment against the defendant in the sum of $2,000. Defendant is here asking to have this judgment set aside.

We are constrained to say, in the light of the record, that the trial court must have been embarrassed, as we are on this review, by the failure of counsel below—and this does not apply to counsel appearing here—to give that aid to a trial judge which is part of their professional duty. Our examination of the record as a whole convinces us that the judgment is wrong and should be set

aside. Referring to our preceding statement of the issues tendered by the pleadings, it will be seen that plaintiffs sought to recover possession of lands 'wrongfully withheld, damages for the wrongful withholding of possession thereof, and further damages for the value of the use and occupation. Verdict number one was for damages in the sum of $2,000, but without indicating what they consisted of, whether this sum was the value of the use and occupation, or the wrongful withholding of possession. The second separate verdict was against the defendant on his claim of damages for plaintiffs' failure to carry out the sale. There was no finding or verdict on the issue of the right of possession. The judgment was only for the damages awarded in verdict number one.

This controversy grows out of a written contract between plaintiffs and the defendant executed January 30, 1925, whereby plaintiffs agreed, for a consideration of $16,000, to convey by good and sufficient warranty deed a section of land in Kiowa county, Colorado, and to furnish an abstract of title showing merchantable title, the land to be free and clear of all liens and incumbrances (except certain liens not important here). The contract called for a cash payment of $1,000, which was paid to the plaintiffs on the day the contract was signed, $5,000 on or before April 5, 1925, and $10,000 on or before five years from the date of the contract. The deed of conveyance was not to be delivered until all payments were made, but in the meantime the deed, when, and if, executed, was to be deposited in escrow in a bank and when it was delivered, if before all payments were made, deferred payments were to be secured by a deed of trust on the property. It will be observed that the contract was executory. There is no provision therein which gives to Rule, the proposed purchaser, the right of possession before the entire purchase price is paid. But at, or soon after, the date of the contract, the defendant Rule, desiring to plow the land which was in sod and produce a crop during the year 1925, actually entered into the pos-

session of the land. The record is entirely clear from the testimony of the plaintiff Link himself that he was present at the time Rule took possession, offered no objection whatever thereto and says that he supposed that, as Rule was going to buy the land, he had the right to take possession. Link pointed out to Rule some of the section lines or corners and after Rule went into possession performed various acts of work on the land for Rule. Link was representing himself in this transaction as well as his co-plaintiff, Mrs. Kerr, his aged mother-in-law. After Rule went into possession he at once began to plow the lands and practically plowed the entire section and planted and cultivated a corn crop, which proved to be of the value of about $4,000. In March, 1925, after defendant's entry upon the land, the plaintiffs delivered to the defendant the abstract of title to the land. There is a conflict in the evidence as to the time this instrument was delivered, but the variance is not of material importance. After the abstract of title was delivered to the defendant he sent the same to his counsel in another state for examination and report upon the same. About March 30, the defendant returned the abstract to the First National Bank of Eads, which institution was holding the documents, with the opinion of defendant's counsel which was that the title was not a merchantable title in that the Union Pacific Land Company, through which the plaintiffs deraigned their title, had made a reservation of oil and gas rights.

There is no question but that such reservation constitutes a lien or incumbrance and that the title was not merchantable and the trial court so instructed the jury and no objection thereto was made by the plaintiffs. The testimony is not in entire harmony in all particulars, but it sufficiently appears without any question that the defendant's objection to the title was well taken and that he was not obliged to take the title to the land and comply with the conditions of the contract on his part to

be performed. Having taken possession of the land, however, and having expended considerable sums of money in plowing and cultivating his crops, he was confronted with an embarrassing situation. After having received a letter from the Eads bank, which was acting for the plaintiffs, in which it was stated that a quitclaim deed of the mineral rights could not be furnished and that it was plaintiffs' understanding that the defendant was purchasing the land subject thereto, the defendant replied to this letter on April 5, 1925, wherein, among other things, he stated that the written contract of purchase called for a clear title to the land free and clear of all liens and incumbrances and he demanded that such a title be delivered to him before making final settlement. Defendant further said in his letter that he was ready at any time to pay the balance then due on the contract, and execute notes for the deferred payments, if the requirement as to removing liens and incumbrances could be met, but if it could not be met he was not then prepared to say what procedure he would follow. Thereafter the defendant offered to submit the matter in dispute to arbitration: one arbitrator to be selected by himself, one by the plaintiffs and a third by these two arbitrators, but the plaintiffs rejected this proposition. Thereafter on May 18, the defendant proposed by letter that he would take the land at a reduction of $5.00 per acre on the purchase price and comply with all other provisions of the contract as to payment and would give the plaintiffs two years time in which to secure a release of the reservations and clear the title, in which event he would pay the plaintiffs an additional $5.00 per acre, which would give them the full contract price. Plaintiffs did not accept this proposition. On June 15, 1925, the defendant by letter requested the plaintiffs to comply with the terms of the contract and refused to accept title unless they did, demanded return of the cash payment of $1,000 and stated that he would retain possession of the property until the crop was harvested for the purpose of taking care of it

and saving it in order to minimize his damages in case of plaintiffs' default. While the testimony, as already suggested, was not in entire accord as to what took place between these parties after the contract was made and after the defendant had entered into possession of the property with the consent of the plaintiffs, the evidence is not in dispute that the land was practically all plowed and put into cultivation. Plaintiffs, however, on June 4, 1925, notified the defendant in writing that they had elected to terminate the agreement and nine days later the defendant advised the plaintiffs that he would not accept the title subject to the reservations of the land company, and further advised plaintiffs that he intended to remain in possession of the land until the crop planted was matured and harvested as above stated, and that he did not hold as tenant of the plaintiffs. This act of termination by plaintiffs was a recognition by them that defendant had not elected to rescind.

The foregoing is not a summary of all of the evidence in the case, but we think that such of it, as is not already mentioned, would not materially affect the rights of the parties. It sufficiently appears that when, after taking possession of the land and making improvements, the defendant learned that the defects in the title would not be cured by plaintiffs, he did not elect to rescind the contract, as above indicated, but was willing to accept the land with the reservations therein, provided plaintiffs would reduce the purchase price $5.00 per acre, and in case they refused that he would remain in possession until his crops were harvested, not as a tenant, but as matter of right under the entry which he made upon the lands with the consent of the plaintiffs. We think that the law of the case that is applicable here, even in accordance with the claims of the plaintiffs and if the testimony in their behalf is to be accepted as true, is that which this court applied in *Florence Oil & Refining Co. v. McCandless,* 26 Colo. 534, 58 Pac. 1084, and by our Court of Appeals in *Mullen v. Bromley,* 21 Colo. App. 399, 122 Pac.

66. We held in the McCandless case that while a vendee, in possession of land under a contract of purchase, may not remain in possession and enjoyment and refuse to pay the purchase price because of an incumbrance where the vendor offers to indemnify him against the same—and the same rule, of course, applies to a case like the one now before us where the title to all the lands is defective in that there is an incumbrance upon it—we also held that where a vendee who purchases land under a contract entitling him to a title free from incumbrance is not bound to accept one that is doubtful or defective, yet he may accept conveyance of the land with the defects with a corresponding abatement of the purchase price, or he may elect to rescind the contract. In either event if the vendee has in good faith, after entering upon the land, made improvements upon the same or planted crops, he may retain possession until he removes the same. The Bromley case enforces the same doctrine. These cases are applicable, for the evidence here shows that the defendant's offer, hereinbefore recited, indicates that he did not intend to rescind the contract. On the contrary plaintiffs declare that they themselves terminated it, while the defendant remained in possession and refused to vacate upon demand unless compensation was given to him by a reduction in the purchase price and until he could harvest his crops.

In our view of the case we deem it immaterial that the testimony in behalf of the plaintiffs and that for the defendant is in some respects irreconcilable and that the jury found for the plaintiffs and against the defendant. The case as made by the evidence is that the plaintiffs agreed to convey lands to the defendant free from liens and incumbrances. Plaintiffs could not, or would not, give a good and merchantable title. The reservation clause of the Union Pacific Land Company constituted an incumbrance of the title and it was, therefore, not merchantable. Had the plaintiffs been able to secure a release from the land company of the reservation, a good

title could have been conveyed. It was not physically impossible to cure the defect; it was merely because the plaintiffs were unable to agree upon terms with the land company for a release of the incumbrance that prevented plaintiffs from conveying good title. Therefore, we say, that the question as to whether or not the defendant knew of this incumbrance either at the time the contract was made, or at some later time after he had taken possession and before he had harvested his crops, learned that there was a defect in the title and remained in possession after that knowledge came to him, is not conclusive against him. The plaintiffs had by covenant agreed to convey a good and merchantable title free and clear of all incumbrances. The time for executing the deed of conveyance had not arrived. The defendant could rightly assume, when he entered upon the land and when he learned of the incumbrance, that before the deed was due the incumbrance would be removed. The defendant did not enter into possession of the lands wrongfully, but with the consent of the plaintiffs, both parties supposing that defendant had the right to do so. The defendant was permitted by the plaintiffs, with full knowledge on their part, to incur expenses in plowing the lands and putting in a crop. Plaintiffs knew, or were supposed to know, of the incumbrance in their title. They chose in their contract expressly to convey a good title. They were presumed in law to know that to convey a good title it was necessary for them to secure a waiver or release by the land company of its oil and gas rights in the premises. It being physically possible to secure the release, but failing to do so, they may not urge that failure as a reason for terminating the contract and ousting the defendant from possession without rendering compensation to him for the expenditures he made in raising his crops or without reducing the purchase price upon terms to be agreed upon between the parties. The defendant was in possession under the terms of the executory contract with permission of the plaintiffs. He elected not to

rescind the contract because of plaintiffs' inability to convey a good title, but rather he elected to accept the title as it was with reduction of the purchase price such as would compensate him for the deficiency. It was defendant's right to insist upon performance of the contract with appropriate abatement of the purchase price. If, however, the defendant had elected to rescind the contract, while it was his duty to offer to restore possession upon repayment of the money advanced, if any, and the value of the improvements that he had placed on the premises, less the sum he had derived from the use and enjoyment, and if, as was true in this case, the plaintiffs refused to pay or secure to his satisfaction the sum that he was entitled to, nevertheless the defendant was entitled to retain possession until such satisfaction was given to him.

The theory of this action adopted by the plaintiffs was wrong and the trial court erred in proceeding upon that theory in its various rulings and its instructions based upon a wrong theory. It may be true that, if the strict rule be applied, the defendant, through the failure of his counsel at the trial properly to object, might not be, and is not, in a position to complain of various instructions that were given and to certain rulings that were made by the court on the evidence; nevertheless the defendant has sufficiently preserved his rights to object to this judgment on the ground that it is unwarranted either in law or in fact for the reasons above stated. The plaintiffs requested of the court certain instructions which were refused. It may be that for technical reasons there was no error in the court's denial of some of these instructions which were tendered by the defendant. Instruction No. 3 requested by the defendant and refused by the court lays down the law applicable here as we have declared it to be in this state in the McCandless and Mullen cases, supra. It should have been given and this refusal is of itself reversible error. Various rulings of the trial court prevented the defendant from showing his expendi-

tures in the improving of this land and the growing of his crops. Even on plaintiffs' mistaken theory defendant was entitled to produce such evidence. The verdict of $2,000 which the jury gave the plaintiffs is bad in not stating the elements of damage, and there is nothing to indicate for what they were awarded. The defendant's possession of the premises was a lawful possession, consented to by the plaintiffs themselves. Whether the defendant remained in possession after demand therefor by the plaintiffs in order to cultivate his crops and remove the same, or whether he elected to take the title as it was with a prior reduction of the purchase price, is not important. In either event, he was entitled to retain possession until he removed his crops.

Considering the entire record the judgment cannot stand not only because of the wrong theory adopted by the plaintiffs in the trial court, but because of a lack of evidence to sustain the plaintiffs' own theory of the case. The judgment is therefore reversed and the cause remanded, further proceedings, if any, not to be inconsistent with the views expressed in this opinion.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.