No. 16,221.
No. 16,222.

White et al. v. Evans et al.
(208 P. [2d] 922)

Decided June 20, 1949. Rehearing denied July 14, 1949.

Mr. OMAR E. GARWOOD, Mr. MILTON C. GARWOOD, for plaintiffs in error.

Mr. RICHARD H. SIMON, Mr. ALBERT T. FRANTZ, Mr. ANDREW J. EVANS, pro se, for defendants in error.

*In Department.*

MR. JUSTICE MOORE delivered the opinion of the court.

Two district court cases were consolidated for trial and are here considered together. Plaintiffs in error were vendees and defendants in error were vendors in a contract for the purchase and sale of real estate. The parties will be hereinafter referred to by name or as vendees and vendors.

The contract dated September 9, 1948, signed by the parties, is in word and figures as follows:

"Englewood, Colorado
September 9, 1948.

"We hereby pay $200.00 cash and give a $2800 chattel mortgage which is a part of this contract as earnest money and part payment of purchase of property located at 355 W. Belleview Avenue, Littleton, Colorado.

"Warranty Deed, giving good and Merchantable Title to be furnished by the owners. All taxes and insurance to be pro-rated.

"The full purchase price of the above-mentioned property to be $15,500. and I agree to pay for same as follows:

"4800. cash to be paid in 30 days from date above mentioned. The above chattel mortgage to be released upon payment of said $4800.00.

"The purchasers assume a $5000. mortgage which is an encumbrance on the premises at the present time.

"The balance of $5500 to be paid in monthly installments of $75.00 or more each month, which will include interest at 6%, and every month thereafter until such a time when purchasers can pay off the balance.

"Should I fail through any cause or refuse to pay the $4800. of the purchase price, as agreed upon on or before thirty (30.) days, I understand and agree that the earnest money that I have here paid shall at the option of the seller be forfeited as liquidated damages.

> "Earl J. White
> Purchaser
> Leone White
> Purchaser
> Andrew J. Evans
> Owner
> Mary R. Evans
> Owner."

Upon the execution of this contract by the parties, the vendees paid to the vendors $200.00 in cash and executed their promissory note for $2800.00 secured by chattel mortgage upon a truck and trailer, and delivered said note and chattel mortgage to the vendors. Immediately thereupon vendees went into possession of the real estate with the understanding that they would pay $100.00 per month rent for the use and occupation of the property

during the period of time consumed in fully consummating the contract. It was not until October 18, 1948, that vendees received an opinion from the title examiner selected by them concerning the condition of the title to said real estate. The title examiner, who was fully qualified and experienced in title work, found that the vendors did not have merchantable title in all of the real estate intended to be conveyed under the afore-mentioned contract, since former owners of the property had filed a plat in which the real estate in question and adjoining property were included within an addition known as Harlem Second Addition. The plat dedicated substantial portions of said property to the use of the public for streets and alleys and there had never been any legal steps taken to vacate the plat or any portion thereof in so far as the property covered by the contract is concerned. The contract originally contemplated the sale of approximately four and one-half acres, and, by reason of the said plat, vendors had marketable title only to approximately three and one-half acres. Upon discovery of this condition of title the vendees contacted vendors and the undisputed evidence is that the vendees declined to accept the title as tendered and then demanded the return of the $200.00 deposit made, together with a return of the promissory note for $2800.00 and a cancellation of the chattel mortgage. This demand was made on October 21, 1948. On October 23, 1948, the vendors, one of whom was himself an attorney, made answer to the demand of the vendees for cancellation and for restoration of their original position, by letter from vendors' attorney to the attorney for vendees, which letter is as follows:

"October 23, 1948

"Mr. Donald D. Keim
Attorney at Law
1726 Champa Street
Denver 2, Colorado
"Dear Don:

Re: Evans and White

"Reference is made to contract of purchase of real estate entered into between Earl J. White and Leone White, purchasers, and Andrew J. Evans and Mary R. Evans, owners, concerning property located at 355 W. Belleview Avenue, Littleton, Colorado, on September 9, 1948.

"On October 21, 1948, you informed Mr. Evans that the purchasers refused to comply with the contract and requested return of cash down payment and release of chattel mortgage securing payment of balance of down payment. I informed you Mr. Evans would consider this request and I would inform you of his answer.

"Please be advised Mr. Evans knows of no reason for Mr. and Mrs. White to refuse to perform the contract. The note for $2800 secured by a chattel mortgage on truck and trailer is in default as of October 9, 1948. Mr. and Mrs. White have paid rent on the premises to November 9, 1948. Since Mr. and Mrs. White refuse to perform and have defaulted in their obligations under the note and chattel mortgage, unless Mr. and Mrs. White pay to Andrew J. Evans and Mary R. Evans the $2800 as liquidated damages provided for in said contract and chattel mortgage on or before Wednesday, October 27, 1948, action will be commenced to foreclose said chattel mortgage. Further please be advised that Mr. and Mrs. Evans demand possession of the premises on November 9, 1948.

"Very truly yours,
"Richard H. Simon."

The vendees having paid two months rent at the rate of $100.00 per month, in addition to the deposits made on account of purchase price of the property, pursuant to the demand for possession made by vendors in the letter of October 23, vacated the real estate and delivered possession thereof to the vendors. On October 29, 1948, vendees filed their complaint in the district court for rescis-

sion of the contract and alleged that the vendors represented the tract to contain five acres and that the land comprised a single, continuous and entire tract, and that the vendors' title in and to said single tract was good and merchantable. The complaint alleged a falsity of these representations, reliance thereon by the vendees, and the damages which they alleged were sustained by them.

On November 8, 1948, the vendors brought a suit against vendees in replevin, and under process therein took possession of the truck and trailer described in the chattel mortgage which was given by vendees to secure the payment of the $2800.00 note.

In the action for cancellation of the contract, vendors answered denying any false representations; admitting that they represented title to the real estate to be good and merchantable; and in effect denying that there was any defect in their title warranting the refusal of vendees to carry out their contract of purchase. For cross complaint in the cancellation suit they sought judgment for specific performance of the contract, or, in the alternative, for a decree forfeiting the earnest money as liquidated damages. This answer was filed on the 28th day of November, 1948, twenty days after the institution by vendors of the replevin action under which they possessed themselves of the truck and trailer. In the replevin action vendees defend upon the ground that the note and chattel mortgage were secured under the circumstances hereinabove set forth and that vendees by reason thereof are relieved from all liability thereon. In their counterclaim they demand damages for the loss of the use of their truck and trailer which they alleged were used by them in their business of hauling for hire.

It is admitted that examination of the real estate in question would not disclose the existence of any streets or alleys since none had been in fact laid out, created, or otherwise marked, and the existence of a street or alley in and upon the premises is not apparent from a physical examination of the land.

Following the receipt of the letter of October 23, 1948, in which vendors demanded performance under the title then tendered by them, vendees purchased other real estate. On November 24, 1948, without further notice to the vendees that vendors intended to modify in any manner their position taken in the letter of October 23, the vendors brought an action against the County Commissioners of Arapahoe County in which they sought an injunction against the County of Arapahoe enjoining and restraining its officers "from opening up, laying out and establishing said street and. alleys over and across the land of plaintiffs and from in any manner interfering with plaintiffs' said land and their possession thereof." In paragraph 3 of the complaint in this suit against the County Commissioners, plaintiffs allege in substance that on the 8th day of November, 1948, the vendors appeared before the commissioners and requested the adoption of a resolution purporting to vacate the streets and alleys in and upon the real estate here in question; that the commissioners failed to comply with this request; and that "the said Board of County Commissioners threatens to proceed to lay out and open up said Delaware Street in pursuance of said purported dedication and without the payment to the plaintiffs of any compensation whatsoever for the land that would be taken from them." It is then alleged that the vendors protested the threatened and intended action of the County of Arapahoe, and that they have been informed by officials of Arapahoe County that the said county claims to own all of the land within said proposed street and alleys, and that it "will open up and establish said Delaware Street and adjoining alleys under said pretended claim of ownership." On December 13, 1948, the district court in said injunction suit signed a decree enjoining and restraining the County of Arapahoe from opening or attempting to open a street or thoroughfare over and across the land in question.

It is clear from the record before us that the vendees had no information whatever concerning the said injunc-

tion suit until the pre-trial conference held shortly prior to the trial of these cases. Upon the conclusion of the trial the court made written findings, and among other things, stated:

"On October 21, 1948, the Whites announced their refusal to perform the contract and demanded the return of the earnest money.

"On October 23, 1948 (Pl. Ex. D), that demand was refused.

"The Court finds that the criticism of the title and the doubt it brought to their minds would excuse and justify the Whites delay in performance but would not justify rescission. 'Under a contract for sale and purchase of land, the vendor may perfect the title even after an action begun involving rescission on the ground of defective or no title.' Gillet vs. Cheairs, 79 Colo. 20.

"Evans elected to perfect the title, if there was a defect which he denies, or to remove the criticism. On November 24, 1948, suit No. 8055, Evans et al vs. Board of County Commissioners et al, was filed and on December 13, 1948, decree therein was entered.

\* \* \*

"It is therefore Ordered, Adjudged and Decreed:

"In cause No. 8024, White et al vs. Evans et al, that the complaint be dismissed; that the defendants have judgment for specific performance on their cross-complaint; that the defendants recover their costs.

"In cause No. 8032, Evans et al vs. White et al, that plaintiffs have judgment for possession and defendants counterclaim be dismissed;

"That execution in cause No. 8032 be stayed for sixty days to abide the outcome of performance in cause No. 8024 and in event of specific performance of the contract in No. 8024, then to re-heard on motion to vacate and dismiss."

The vendees bring the cases here for review and both parties ask for final determination upon application for supersedeas.

### Questions to be Determined.

First: *When examination of lands, forming the subject matter of a contract for purchase of real estate, will not disclose the existence of a plat dedicating substantial portions thereof to public use for streets and alleys, and vendor has contracted to convey marketable title, is the vendee justified in rejecting the tendered title and in demanding a rescission of the contract?*

This question must be answered in the affirmative. Under the facts here present the trial court erred in finding that, "The criticism of the title and the doubt it brought to their minds would excuse and justify the Whites' delay in performance but would not justify rescission." No performance was required of the vendees until merchantable title was tendered by the vendors. The vendors did not at any time tender a merchantable title.

In *Federal Farm Mortgage Corporation v. Schmidt*, 109 Colo. 467, 126 P. (2d) 1036, we approved the following definition of a marketable title: "A purchaser of land, before he is required to pay the purchase price, is entitled, unless stipulated to the contrary, to receive a marketable title, a title that is fairly deducible of record and not depending on matters resting in parol. The term 'marketable title,' when applied to real estate, means a title free from reasonable doubt. It means a title that is reasonably free from such doubts as will affect the market value of the estate; one which a reasonably prudent person with knowledge of all the facts and their legal bearing would be willing to accept."

In *Rule v. Link*, 84 Colo. 82, 267 Pac. 1005, we held that a reservation of gas and oil rights in a transfer of title constituted an encumbrance upon the land and justified a refusal of grantee to perform.

In *Eriksen v. Whitescarver*, 57 Colo. 409, 142 Pac. 413, the lands contracted for were subject to a right of way

for an irrigation ditch and we held that the easement thereby created operated to destroy merchantable title, and the trial court's judgment decreeing specific performance was reversed.

In *Simpson et al. v. Klipstein,* 89 N.J. Eq. 543, 105 Atl. 218, the vendee refused performance for the reason that the title tendered was subject to an easement of the identical character as that present in the case at bar. In reversing the trial court's decree of specific performance the court said: "Putting out of view the mortgages specified (with which we are not concerned) under such a contract the vendor was bound to have and tender a title free from encumbrances, and dependent for its validity upon no doubtful questions of law or fact. The title must be such as to make it reasonably certain that it will not be called into question in the future so as to subject the purchaser to the hazard of litigation with reference thereto. *Vreeland v. Blauvelt,* 23 N. J. Eq. 483; *Methodist Episcopal Church v. Roberson,* 68 N.J. Eq. 431 [58 Atl. 1056]; *Van Riper v. Wickersham,* 77 N.J. Eq. 232 [76 Atl. 1020, 30 L.R.A. (N.S.) 25, Ann. Cas. 1912A, 319].

"Such a title the vendor did not tender and did not have." To like effect is *Atlantic Mortgage & Finance Co. v. Hamilton,* 40 F. (2d) 583.

For reasons hereinafter set forth the case of *Gillett v. Cheairs,* 79 Colo. 20, 243 Pac. 1112, upon which the trial court relied, is inapplicable to the facts here present.

In view of the allegations of vendors' complaint in the injunction suit against the Commissioners of Arapahoe County, it would be absurd to contend that the defect in title was not substantial. We accordingly hold that the title tendered by vendors was not merchantable and that the vendees had the right to refuse performance and demand rescission of the contract.

Second: *Did the vendors have the right to correct the*

*defect in the title, after their election to stand on the title tendered, after repossessing the property and after instituting their replevin action to enforce the forfeiture provisions of their contract?*

█ Generally, where time is not made the essence of a contract for the sale and purchase of real estate, the vendor has the right within a reasonable time after notice of the defect in the title to correct the same. But the vendor may be estopped from asserting this right, as where his conduct amounts to an election on his part to stand upon the title as tendered. The vendors in this case, having been informed on October 21, 1948, concerning the defect, considered the objections, and on October 23, 1948, gave the vendees their "answer." Vendors stated that they knew of "no reason for Mr. and Mrs. White to refuse to perform the contract." They further stated: "Further please be advised that Mr. and Mrs. Evans demand possession of the premises on November 9, 1948."

Acting upon these assertions vendees surrendered possession and purchased other property, thus materially changing their position. They immediately sought redress by their action for rescission and restoration to their original position. Thus it is apparent that no suggestion of an offer to correct the defect appears, and by positive assertion the vendors elected to do nothing about the defect of which vendees complained, and to make their election even more absolute, and even after the action for rescission had been commenced, the vendors reaffirmed their position by taking possession of the truck and trailer of vendees in the replevin action in which they sought full forfeiture of the $2800.00 note. This replevin suit was filed on November 8, 1949. It was not until November 24, 1948, that any purported steps were taken to correct the defect in title, and even then the vendees were not informed thereof. Vendees had no

knowledge of any attempt to correct defect until the pretrial conference in these cases.

We hold that the vendors, under these circumstances, by their conduct are estopped from claiming the right to correct the defect and demand performance on the part of the purchasers. The findings of the trial court that, "Evans elected to perfect the title, if there was a defect which he denies, or to remove the criticism," is wholly without support in the evidence. As a matter of law the evidence conclusively establishes exactly the opposite election, namely, Evans elected to stand on the title tendered. His subsequent change of position, not in any manner communicated to vendees, was wholly without legal effect.

Counsel for the contending parties devote much space in their briefs to argument concerning the legality of the decree entered in the injuction suit against the county. It is unnecessary for us to determine whether that action sufficed to remove the defect. The vendors had no right, under the circumstances, to change their position and tender a corrected title, and whether the action did or did not remove the defect is not material.

We deem it sufficient, in support of these views, to again affirm the oft repeated principle that forfeitures are not favored in equity. *Phares v. Don Carlos,* 71 Colo. 508, 208 Pac. 458; *Wiley v. Lininger,* 119 Colo. 497, 204 P. (2d) 1083.

The general rule applicable to the conduct of vendors under the circumstances disclosed by this record is well stated in section 275, 55 American Jurisprudence at pages 720, 721, as follows: "Moreover, when the vendor wrongfully demands that the vendee accept a title which is not good, and brings an action to enforce a forfeiture for the failure of vendee to accept such title, any right which the vendor may have had, under other circumstances, to an additional time in which to perfect defects in his title is lost."

For the reasons above stated the judgments of the trial court are each reversed and the cause remanded with directions to enter judgment in favor of vendees in the action for rescission, and in favor of the vendees (defendants) in the replevin action for such damages as they have sustained resultant upon the unwarranted withholding of possession of the truck and trailer belonging to them.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE JACKSON concur.