**LONE STAR DEVELOPMENT CORPORATION, Plaintiff-Appellant,**

v.

**M. A. MILLER, a/k/a Michael A. Miller, and David M. Cross, Defendants-Appellees.**

**No. 76–1595.**

United States Court of Appeals, Tenth Circuit.

Submitted Sept. 26, 1977.

Decided Oct. 25, 1977.

Rehearing Denied Dec. 5, 1977.

James J. Zak of Towey & Zak, Denver, Colo., for plaintiff-appellant.

John J. Keilbach of Preston, Altman & Parlapiano, Pueblo, Colo., for defendants-appellees.

Before SETH and DOYLE, Circuit Judges, and STANLEY,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

In this action in which damages are sought for alleged breach of contract for the sale of real estate, the basic issue is whether the presence of an unpaid loan owed by the vendor, which loan constituted a lien against the real property, was a justification for the vendees to rescind the contract and obtain refund, of the down payment which had been made by the vendees.

On May 29, 1974, Lone Star Development Corp. entered into a contract with defendants-appellees to sell to the latter certain real property in Pueblo County, Colorado, for the sum of $588,000. $1,000 was paid as earnest money at the time that the agreement was reach. The balance was to have been paid at the closing on September 16, 1974. At that time plaintiff-appellant, vendor, was obligated to deliver a warranty deed and to furnish a merchantable title.

On March 27, 1974, prior to the date that the contract was signed, the property had been sold at a foreclosure sale for the sum of $479,756.71. This was pursuant to the terms of the deed of trust which secured an obligation in excess of $410,000. But under the law of Colorado, the property was subject to redemption by plaintiff-appellant at any time prior to September 26, 1974. Defendants were fully aware of the foreclosure sale as well as the right of redemption when they entered the contract. Lone Star was then in reorganization under the Bankruptcy Act and did not at that time or thereafter have independent funds with which to redeem the property. Lone Star maintains, and the trial court so found, that it was its intention to use the sale proceeds for discharging the obligation and lien. However, the appellees refused to go through with the transaction based on their contention that the unpaid lien rendered the title unmerchantable since it would not be removed prior to the closing. Thereupon, Lone Star filed the present action seeking damages.

The closing was not carried out and, of course, the property was not redeemed. Lone Star allegedly suffered damages as a result of loss of the transaction and it filed this suit seeking to recover from the defendants-appellants. They in turn moved for summary judgment and submitted a "stipulation" of facts stating that they agreed to it only for the purpose of the summary judgment motion. Lone Star did not agree with it for any purpose. This statement of facts contained, among other paragraphs, the following:

11. All parties were aware of the state of Plaintiff's title from before May 29, 1974, through September 16, 1974.

12. At no time from June 12, 1974, through September 16, 1974, did Plaintiff have any resources with which to redeem the 19-acre tract from foreclosure.

13. In order to redeem the property from foreclosure, it would have been necessary for Plaintiff to have used Four Hundred Seventy-Nine Thousand Seven Hundred Fifty-Six Dollars Seventy-One Cents (479,756.71) of the money to be supplied by Defendants at closing.

* Of the District of Kansas, sitting by designation.

14. Plaintiff did not at any time on, before or after September 16, 1974, ever supply Defendants with any abstract of title or title insurance binder respecting the 19-acre tract.

15. At no time did Plaintiff ever redeem the property from foreclosure.

18. Defendants did not on September 16, 1974, tender Plaintiff the balance of the purchase price.

In connection with the motion for summary judgment, briefs were submitted and the trial court granted the motion holding that the literal language of the contract governed. Since this required the seller to deliver on September 16, 1974, a general warranty deed conveying the property and since the seller could not come up with the funds on that date and had to rely on receiving these funds from the seller, it was unable to perform. As the court expressed it:

> The possibility that a deed then delivered could become valid and sufficient at a later time if the plaintiff did apply the purchase price to the redemption of the property is not a basis for charging the defendants with consequential damages resulting from their failure to make that payment in reliance upon a presumption and conjecture that the plaintiff would make its warranties good by accomplishing the redemption. Given the knowledge of both plaintiff and purchasers that a foreclosure sale had been held before the contract to buy was executed and given the failure of the parties to make any reference to the fact in the contract, there is nothing to indicate that the agreement was anything other than what is reflected in the written contract.

*Lone Star Development Corp. v. Miller,* No. 74–M–989 (D.Colo. May 3, 1976). The trial court then went on to say that the purchaser had no duty to tender the purchase price until the lien was removed by the payment of the outstanding debt. Based upon this interpretation of the law, the court concluded that there were no issues of fact to be tried and ordered that judgment be entered for the defendants on the complaint and on the defendants' counterclaim for the down payment.

The prefatory contention is that there existed issues of fact which served to preclude the entry of summary judgment. The questions which were tendered are whether the defendants-appellees were unable to go through with the contract on an independent basis, its own lack of financing; whether Lone Star intended to pay off the lien so as to redeem the property with the funds which it would receive from appellees at the closing; and finally, whether the redemption would have allowed the plaintiff to furnish a merchantable title to the property. Defendants, of course, maintain that the inability of the plaintiff-appellant to pay off the debt and discharge the lien prior to the closing in and of itself constituted a violation of the contract justifying rescission. The trial court, of course, accepted this.

Appellant relies on two Colorado cases, *White v. Evans,* 120 Colo. 200, 208 P.2d 922 (1949) and *Mitchell v. Evans,* 150 Colo. 568, 375 P.2d 101 (1962). Neither of these deal with our specific problem, that is repayment of the loan with independent funds. There are quotes in the *White* case that the purchaser of real estate is entitled to a marketable title, one which is free of doubts and which a reasonable man would accept. There can be no quarrel with this doctrine. It was stated, however, in relation to a fact situation in which a plat existed which dedicated substantial portions of the property purporting to be conveyed to the public. No effort had been made to vacate the plat and so, as a result, the vendors had title to only three and one-half acres while purporting to convey four and one-half. It is not surprising that the court upheld the vendee's refusal to go through with this transaction.

*Mitchell v. Evans, supra,* was of the same character. It was conceded that there was a defect in the title not based upon an unpaid lien. Again, the court ruled in favor of the buyer noting that ordinarily a seller has a reasonable time to correct defects, but here the seller had elected to stand on the title that was tendered.

In construing the applicable law of Colorado we are unable to discover that this merchantable title doctrine applies to facts like those which were presented. In fact, the Colorado law is just the opposite.

■ The Supreme Court in *Garbarino v. Union Savings & Loan Ass'n*, 107 Colo. 140, 109 P.2d 638 (1941), recognized that two Reconstruction Finance Corporation deeds were intended to be released if and when the sale was completed. The court said:

> It is undisputed that when the alleged contract was made and at the time of the trial the property was subject to two blanket deeds of trust to the Reconstruction Finance Corporation. Plaintiff introduced testimony to the effect that these incumbrances could and would be released if and when the sale was completed. This testimony was not contradicted. Upon the defendant's refusal to proceed further with the transaction, which, as shown by his pleadings and testimony, was in no manner induced by the condition of the title to the property, the plaintiff was under no obligation to go through the useless and idle performance of securing releases of the trust deeds, and the uncontradicted proof that such could have been done if the offered purchase price had been paid, was sufficient to sustain the allegations of plaintiff's replication.

109 P.2d at 641. So, therefore, there can be no doubt that the Colorado Supreme Court has recognized that a lien which is going to be paid off from the proceeds of the sale is not to be regarded as failure or inability to furnish a marketable title.

■ In the present case it appears that defendants-vendees were fully aware of the lien and the foreclosure, and so if it appears from the trial that plaintiff intended to pay off this loan from the proceeds of the sale, it would follow that the trial court erred in its conclusion.

The rule expressed in *Garbarino* by Justice Knous, later Judge Knous of the United States District Court for the District of Colorado, is accepted in the vast majority of cases. This is readily apparent from the annotation in 53 A.L.R.3rd 678, entitled, "Vendor and Purchaser: Marketability of Title as Affected by Lien Dischargeable Only Out of Funds to be Received from Purchaser at Closing."[1] The case which is annotated in the A.L.R. Note is *Robeson-Marion Development Co. v. Powers Co.*, 256 S.C. 583, 18 S.E.2d 454 (1971). The record there revealed that the seller would have been unable to convey the unencumbered fee without using the purchase money received on the day of the closing to satisfy the outstanding liens. The South Carolina court held that the seller was not obliged to clear the property of liens and encumbrances prior to the tender of the purchase price as long as the tendered purchase price was available for paying off the liens and encumbrances. Numerous other cases to the same effect are cited in the annotation.

This court in *Continental Oil Co. v. Mulich*, 70 F.2d 521 (10th Cir. 1934), ruled the same way in a diversity case from Kansas. This court said:

> The outstanding judgment, mortgage lien, and unpaid taxes did not excuse the Continental Company from performing its agreement to purchase the property. Where such outstanding liens may be satisfied out of the purchase price and discharged when the sale is consummated, the rule in Kansas is that they do not render the title so unmerchantable as to

---

1. The majority holding is stated as follows in the annotation at p. 681:

   If circumstances are such that a vendor is unable to discharge a lien upon his property other than by applying the funds to be obtained from the purchaser at closing, it is clear that his property will not be free of the lien at the time of closing, and the purchaser (whether from extreme caution, a desire to avoid the contractual obligation, or some other reason) may ob-ject that the title tendered to him is not marketable. . . . Thus, a vendor who could convey a perfect title if allowed the use of the purchase price to discharge the lien could find himself unable to convey the required title.

   Faced with this situation *the majority of courts have held that title is not rendered unmarketable where the lien can be discharged from the purchase price at closing so as to protect the vendor.* (Emphasis supplied)

constitute a defense to a suit for specific performance. . . .

True, the contract called for a merchantable abstract, but when the Continental Company was apprised of such outstanding liens it made no objection thereto; instead it induced the Mulichs to spend time, effort, and money to cure other defects and to relieve the property from the zoning restrictions.

*Id.* at 524. Similarly, in our case the purchaser knew of the outstanding liens and made no objection thereto. We cite this to show the extent to which the principle as to payment of a lien has acceptance.

Counsel for appellees maintain that *Garbarino* has been overruled by *White v. Evans, supra,* and *Mitchell v. Evans, supra.* We disagree. The overruling process is not accomplished by the court quoting from a decision, the language of which is arguably inconsistent with the case which is the subject of the attack without even considering the facts. In those instances the court was dealing with genuine title defects and not with the payment of an outstanding lien.

Only two jurisdictions appear to follow the literal approach that was adopted in the district court. These are Alabama and Iowa. *See Johnson v. Malone,* 252 Ala. 609, 42 So.2d 505 (1949), and *Lahner v. Schaum,* 198 Iowa 1388, 201 N.W. 80 (1924).

The majority rule, that which is set forth in *Garbarino,* is based on common sense and reason. There are plenty of safeguards to insure that the money will be paid to the bank or lending agency from the purchase price. To compel a seller to go out into the money market and borrow temporary funds in order to close a transaction is highly unreasonable. The plaintiff here was, to the knowledge of the purchaser, in reorganization under the Bankruptcy Act and would have probably found it impossible to get temporary funds amounting to over one-half million dollars prior to the closing. The important thing is that the lien is paid off at the time of the conveyance.

In sum, we are of the opinion that there were some limited fact issues and that the trial court erred in granting summary judgment. We are also of the opinion that the court erred in holding that the vendees were entitled to rescind the contract.

Accordingly, the judgment must be reversed and the cause remanded for a trial. It is so ordered.